## RYAN v. HUMPHRIES.

No. 4939.   Opinion Filed July 27, 1915.

(150 Pac. 1106.)

1. **SCHOOLS AND SCHOOL DISTRICTS—School Boards—Powers.**
It may be laid down as a general rule that, when several persons are authorized to perform a public service, or to do an act of a public nature, as an organized body, which requires deliberation, they should be convened in a body, in order that they may have the counsel and advice of every member, although they may not all be of the same opinion concerning the matter in hand.

2. **SAME.** A public body, such as a school board, consisting of several persons, authorized to perform acts of a public nature, and to which public duties are intrusted, such as the employment of teachers for the public schools, should perform such duties as a board, and to do so it is imperative that all should meet, or at least be notified of such meeting, and have an opportunity to meet and to consult relative to the emloyment of such teachers, before a valid contract can be entered into by them binding the district.

3. **SAME—Ratification of Contracts.** The foregoing is subject to the doctrine of law that, where a public body, such as a school board, has the original power and authority to enter into a contract, such as the employment of teachers, such body or board may legally ratify a contract of employment, made by the board, or a majority of the members thereof, in an irregular or unauthorized manner, and a ratification of such a contract is equivalent to a full compliance with authority originally given, and when so done renders the contract valid from its inception.

(Syllabus by Robberts, C.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Mandamus by W. E. G. Humphries against Timothy Ryan. The writ was issued, and respondent brings error. Modified and affirmed.

*Parmenter & Lenertz,* for plaint.ff in error.

*W. C. Henderson,* for defendant in error.

Opinion by ROBBERTS, C. This case comes here from the district court of Comanche county, and is a suit in mandamus to compel the treasurer of school district No. 16 of said county to reg'ster and pay a warrant in favor of the relator, for services as school teacher in said distr'ct, issued and signed by the director and clerk of said district.

It appears that the relator was employed by and entered into a written contract with the school board of said district, by and through the director, J. H. Abbott, and the clerk, J. F. Gamble. Said contract was made at a meeting of said board August 20, 1912, to teach the school for said district for six months, beginning October 7, 1912, at the salary of $90 a month, and acting under said contract plaintiff began teaching said school October 7, 1912, and conducted said school for one full school month, and on November 27, 1912, at a regular meeting of the school board for said district, his claim for $90 salary for said month was allowed, and warrant therefor issued, signed by the director and clerk of the district. When this warrant was presented to the respondent, who was treasurer of said district, he refused to register or to pay the warrant, although he had at said time funds of said district more than sufficient to pay the warrant. In his answer respondent alleges that on presentation of said warrant by the relator to him he refused to pay, and refused to register said warrant, and has ever since said

time wholly failed and refused to register and pay said warrant.

The respondent sets up various reasons why he refused to register and pay said warrant, the most potent of which are:

(1) "That there was never at any time a legally called and held meeting of the members of the school board of school district No. 16, whereby a contract was or could have been made between the relator and said school board, * * * and that the director and clerk of said board never at any time called a meeting of the board where contracts were considered, passed upon, executed, signed, or delivered with reference to the hiring of teachers for said school district, and that the respondent never attended nor had an opportunity to attend a meeting of said school board where said matters were to be taken up, discussed, passed upon, and disposed of; that the respondent has at various times requested the director and clerk of said board to call a meeting of the board, that the letting of contracts for school teachers might be taken up and disposed of, but said officers failed, neglected, and refused to hold said meeting at any time, and never gave notice to respondent of said meeting, nor was he given an opportunity to attend, nor has he attended any meeting of said board, but he has been excluded from such meetings."

(2) As a further reason why respondent refused to register and pay for said warrant, he alleges:

That "on the 12th day of June, 1912, there was an annual meeting of the qualified voters of said school district for the purpose, among other things, and whereat the said qualified voters at said meeting voted upon and directed the money to be expended in the conduct of school and the length of time school should be had and held in the district, and it was declared by a majority of the voters voting upon the proposition that there

should be an eight months' term and after it had been determined that there should be an eight months' term of school in said district, then the school board of said district met and certified to the excise board of Comanche county that there should be an expenditure of $860 for the hiring of teachers to conduct said schools in said district for said period of time, and that the excise board of Comanche county, Okla., confirmed and approved the same; that the said J. F. Gamble pretended to act as clerk, and said J. H. Abbott pretended to act as director, and in direct violation and contrary to the expressed will of the majority of the voters of said school district, to the action of the excise board, and contrary to law, pretended and attempted to make a contract for the hiring of school teachers whereby said school district would only be able, under and by virtue of the amount of money appropriated for the purpose, to have a term of school for only about five months; that this answering relator pretends to have a pretended contract for teaching at $90 a month, and pretended to be hired for six months, and Cena Crowford pretends to have a contract with the said clerk and director at $40 per month, for on or about eight months, and that another pretended and alleged contract has been, by the said clerk and director, attempted to be made with Estelle Richardson, at $40 per month, for on or about six months; that this respondent is unable to state the exact terms of the pretended contract of Estelle Richardson, for the reason that said Estelle Richardson refuses to exhibit and show the same to this answering defendant; that each and all of the said alleged and pretended contracts were made without the knowledge or consent of this respondent, and that no meeting was ever called or had whereby this respondent had an opportunity to attend the same, and where any of said contracts were considered, discussed, or passed upon; that said unlawful and pretended acts of said Gamble and said Abbott are not binding upon said school district, and are contrary and antagonistic to the expressed will of the voters of

the said school district as to the expenditure of money and length of term that said school shall be conducted; that under the plan pursued by said clerk and said director said school district could only have five months' term, instead of eight months as provided by vote; that the alleged and pretended salary to have been paid to the plaintiff is unwarranted, excessive, and a fraud upon the voters of said school district."

The contention of the respondent upon the first proposition, that the contract of employment was made without his knowledge or consent, by the other two members of the board, and at a time when a meeting of the board had not been legally called and was not in session, would ordinarily present a complicated and serious question. We are of opinion that the evidence clearly shows that the contract was made by Abbott and Gamble, as director and clerk of the district, in the absence and without the consent or knowledge of the respondent. Why this was done does not appear from the evidence. The record or minutes of the school board meeting held on the 20th day of August shows that the meeting was *called,* but all parties practically admit that respondent had no notice of the meeting and was not present. The minutes, so far as they relate to the subject in hand, are as follows:

"Special meeting of August 20, 1912, school board meeting called at Gamble's office for the purpose of hiring two teachers. W. E. G. Humphries was employed for six months at $90.00 per month, and Estelle Richardson at $40.00 per month for six months.

"J. H. ABBOTT, *Director.*
"J. F. GAMBLE, *Clerk.*"

There is nothing in the record or minutes showing how the meeting was called or on whom the notice was

served.    Counsel for respondent submit a strong argu-
ment, backed up by cogent reasoning and controlling
authorities, to the effect that the action of the two mem-
bers in employing the relator, without the presence,
knowledge, or consent of respondent, would be invalid,
and we would be inclined to so hold, were it not for the
fact that at a subsequent, full meeting of the school
board, held on the 26th or 27th day of November, 1912,
the claim of the relator for services as such teacher,
under the contract involved herein, was allowed.    The
allowance by the board was for the identical services and
demand in controversy in this case.    The minutes of the
board on that particular question are as follows:

"Moved and seconded that teacher's salary be al-
lowed for the month of October, 1912, and duplicate war-
rants issued to pay same, in lieu of warrants previously
issued.    Motion carried:    J. M. Hinds, J. H. Abbott, yes.
T. Ryan, no.    No further business, the meeting ad-
journed."

We gather from the evidence that the claim was al-
lowed by the board and warrant issued prior to the meet-
ing above referred to, but the clerk failed to show the
financial condition of the district on the warrant as re-
quired by law, and for that reason this allowance was
made, and warrant issued, "in lieu of warrant previously
issued."

This action of the board brings us to the question of
its effect, in the way of ratification of the original contract
entered into by Abbott and Gamble as director and clerk.
In this connection it may not be out of place to say that
the question of the power of municipal or quasi municipal
corporations to ratify unauthorized contracts is one of
the generally recognized controversies of the court and

bar. The authorities are absolutely irreconcilable; and after careful study of the proposition the writer hereof acknowledges himself at sea, in the midst of the storm of high rolling waves of uncertainty; but we gather from the weight of the authorities that, where the corporation had the power to enter into the contract under consideration, and the manner of making it being the only question involved, such contract may, as a rule, be ratified by an acceptance of the benefits of the contract by corporations, and by a subsequent recognition and substantial performance of the acts and conditions required by law in the execution of the legal contract, or by acquiescence in the conditions and benefits obtained by virtue of the contract. This seems to be, in substance, the doctrine laid down in *Hill v. City of Indianapolis* (C. C.), 92 Fed. 467; *Daviess County v. Dickinson,* 117 U. S. 657, 6 Sup. Ct. 897, 29 L. Ed. 1026; *Town of Bloomfield v. Charter Oak Bank,* 121 U. S. 121, 7 Sup. Ct. 865, 30 L. Ed. 923; and a long list of other authorities.

In the first paragraph of the syllabus in *Hill v. City of Indianapolis, supra,* we find this language:

"A city council having authority to enter into a contract, or to authorize its board of public works to enter into it, on behalf of the city, may legally ratify such a contract made by the board, without previous authority, the performance of the contract by the second party being a sufficient consideration, and a ratification is equivalent to authority originally given, and renders the contract valid from its date."

In that case the plaintiff brought an action against the city to recover for services performed, as an expert engineer, in the examination of certain waterworks in the city, belonging to a private corporation, and in con-

templation of purchase by the city. Under the statutes of Indiana, the board of public works of the city possesses, among others, the following powers:

"The board of public works shall have power * * * to purchase or erect, by contract or otherwise, and operate waterworks, gas works, electric light works, street car and other lines for the conveyance of passengers, and freight, natural gas lines, telephone and telegraph lines, steam and power houses and lines for the purpose of supplying such city and the suburbs thereof, or to purchase or hold a majority of the stock in corporations organized for either of the above purposes, provided that none of the powers conferred by this paragraph shall be exercised except in pursuance of an ordinance specifically directing the same."

It appears that the board entered into the contract with plaintiff without the city having first passed the ordinance "specifically directing the same." In its answer the city set up the fact that the plaintiff was employed by the board of public works without any previous authority conferred by the city. Justice Baker, sitting as United States Circuit Judge, sustained a demurrer to this answer, and in so doing, in the body of the opinion, says:

"The board of public works, improperly assuming that this ordinance conferred upon them authority to employ the plaintiff, who is an experienced consulting engineer for waterworks and sewerage, by written correspondence set out in the complaint, and admitted in the answer, entered into a contract with him to make an examination, and report upon the physical condition, the cost of reproduction, and the present valuation of the property of the Indianapolis Water Company, agreeing to pay the plaintiff for his services at the rate of $50 per day. The plaintiff, in pursuance of this contract, and with the knowledge of the city, entered upon its performance, and performed work and labor for the city of the

aggregate value of $2,440. The answer admits the rendition of the services, and that their value is, as stated. It is alleged in the answer that at the time the board of public works entered into said contract the charter of the city, in section 51, provided as follows: 'No executive department, officer or employee thereof, shall have power to bind such city by any contract, agreement or in any other way to any extent beyond the amount of money at the time already appropriated by the ordinance for the purposes of such department, and all contracts or agreements, express or implied, and all obligations, of any and every sort beyond such existing appropriations are declared to be absolutely void.'

"Facts are alleged in the answer which it is claimed show that there was no appropriation existing at the time for the payment of the plaintiff's services. It is by no means certain that the facts stated in the answer show that there was no existing appropriation for such services. But, assuming that there was no existing appropriation, still the demurrer to the answer must be sustained. The board of public works had jurisdiction of the subject-matter of purchasing the waterworks, and necessarily had jurisdiction of all incidental inquiries necessary to make a contract understandingly for such purchase. This would necessarily impose upon the board the duty of ascertaining the character, extent, and physical condition of the waterworks plant, the cost of its reproduction, and the present value of the plant. All that was required by the statute to authorize the board of public works to enter upon the performance of these duties was the adoption of an ordinance by the common council of the city directing it to proceed. The board, without such specific authorization previously granted to it by ordinance, assumed, by virtue of the ordinance above referred to, that it had been so authorized, and in behalf of the city it entered into the contract with the plaintiff for the services which he thereafter rendered. After the services had been rendered, the common council

of the city, on the 19th day of December, 1898, adopted an ordinance making a specific appropriation for the payment of the claim of the plaintiff, and set apart specific funds for that purpose. This ordinance amounts to a ratification, if the act of the board in behalf of the city is capable of ratification by the common council. The question presented, then, is simply this: Is the ratification by the common council of the city, of an act done by one of its executive boards for and on behalf of the city, but without previous authority, a binding ratification of the previous invalid contract made by the board of public works? On this question there can be no doubt.

" 'Ratification, as it relates to the law of agency, is the express or implied adopt'on of the acts of another by one for whom the other assumes to be acting, but without authority, and such ratification as effectually establishes the duties, rights, and liabilities of the parties as if the acts ratified had been fully authorized in the beginning.' 1 Am. & Eng. Enc. Law, p. 1181, and the numerous authorities there cited.

"Here the common council had the undoubted authority to have employed the plaintiff to render the services which he did render, if it had chosen to do so. It had the power to authorize the board of public works, in behalf of the city, to enter into a contract for such services. The board of public works professed to make the contract n suit on behalf and by virtue of the authority of the city. It is the case of one professing to contract for and in the name of another. Of course, the contract, being unauthor zed, is not binding, unless the principal ratifies it. Ratification is, in general, the adoption of a previously formed contract, notwithstand'ng the vice that rendered it relatively void. By the very nature of the act of ratification the party ratifying becomes a party to the or'ginal contract. He that was not bound becomes bound by it, and entitled to all the proper benefits of it. He accepts the considerat'on of the contract as a sufficient consideration for adopting it, and this is quite enough to

support a ratification. It follows that the contract, having been ratified by the common council of the city, becomes binding upon it from the date that it was improvidently entered into by the board of public works, and is just as conclusive and binding upon it as though it had been made by the previous authorization of the board of public works to make it. * * * Of course, the principle of ratification does not apply where the act sought to be ratified is *ultra vires* the powers of the corporation. But this is not such a case."

As stated before herein, this seems to be the rule followed and approved by the weight of authorities on the subject; and upon the facts in the instant case, as necessarily found by the trial court, sustained by these authorities, we hold that the contract of employment of the relator was fully ratified by the board, so far as it relates to the services involved herein, and such ratification is equivalent to authority originally existing, and renders the contract valid from its date.

The next contention of counsel for respondent, that no provision was made by the excise board as required by law for the payment of this warrant, and that "the contract exceeds the estimates," is a question of fact, passed upon by the trial court, and under the rule would not be disturbed by this court, but we have also examined the facts of the case in this particular, and find that the decision of the trial court in that behalf is clearly sustained by the evidence. Bearing in mind that the instant case only involves the payment of $90, the first month's salary, we call attention to the financial showing made in the warrant, as follows:

"School Warrant No. 59, Series 1912.

Amount of estimate approved............................$1,378.00
Warrants .............................................$ 90.15
This warrant ..................................... 90.00
                                                        ———
    Total ...............................................$180.15    180.15
                                                                    ———
    Balance ...........................................$1,197.85

"11-27-12 W. E. G. Humphries for teaching."

This statement shows a balance of $1,197.85 in the treasury, or the estimate after making the claim in controversy herein, and that is all there is involved in the case. The contentions of the counsel for respondent in, that particular cannot be sustained.

This brings us to the question of the relief sought.

Section 5, c. 80, Sess. Laws 1910-11, among other things, provides:

"It is hereby made the duty of the treasurer of the county, or the treasurer of any subdivision thereof, to whom a warrant, certificate of indebtedness or bond is directed for payment, to register the same in a book to be kept for that purpose by entering therein the number, the date, the name of the payee, the fund upon which it is drawn and the amount, and by writing on the warrant or evidence of indebtedness, the date of registration, his name and official title. All warrants, certificates of indebtedness or bonds, shall be registered in the same numerical order in which they have been issued, and when so registered shall be returned to the officer attesting the same. No warrant, certificate of indebtedness or bond shall be a valid charge until registered by the treasurer of the muncipality issuing the same."

In passing upon the same proposition involved in this particular branch of the instant case, and having under contemplation the section of the statute above

quoted, Justice Hayes, in *Hopley, Treasurer, v. Benton,* 38 Okla. 223-227, 132 Pac. 808, 810, says:

"Such registration required by the statute is for the purpose of preventing the drawing of warrants in excess of the estimate of expenses made for any fiscal year, pay·able out of any specific sum, and thereby creating a de-ficit. The treasurer exercises no discretion in the allow-ance or disallowance of claims. His sole duty, when a warrant is legally drawn and presented to him, is to examine the records to ascertain whether or not, the warrants theretofore drawn upon the same fund, to-gether with the warrant involved, will exceed the esti-mate of expenses approved by the excise board for the current fiscal year, and therefore create a deficiency in the fund upon which the warrant is drawn. It is con-ceded that such would not be the result of his regis-tering this warrant. He therefore had but a plain min-isterial duty to perform, involving the exercise of no discretion, and to compel him to perform which man-damus will lie. 26 Cyc. 286.

"Defendant in error could not demand payment of his warrant and thereupon resort to the remedy of an action upon plaintiff in error's bond, which was held in the Hewitt Case to be an adequate remedy, for the reason that the statute specifically provides that the warrant, until presented to the treasurer and registered by him, shall not be a valid claim."

It must be conceded that the case just quoted is con-clusive of this branch of the case at bar, and that the trial court committed no error, but was fully justified, under the law and facts, in granting the peremptory order compelling the respondent to register the warrant as prayed. We do not overlook the fact that the judg-ment of the lower court does not in direct terms order the registration of the warrant, but directs payment thereof, but we conclude that the registration must nec-

essarily have been, and was, included in the judgment for payment.

The question of compelling payment of the warrant by the treasurer of the district at this time presents a different question. Without passing upon the action of the trial court in making such order at the time of the trial, we are of the opinion that such order should not now be affirmed, for the reason that nearly three years have passed since the trial. This court has no knowledge of the present condition of the funds, and evidently, if there were no funds in the hands of the treasurer, it would be a useless order to direct payment, or to attempt to compel payment when there is no fund to pay the same. Nor do we intend by this to intimate or indicate in any way that the order for payment should have been made.

So far as it relates to the registration of the warrant, the case is affirmed, and remanded to the lower court, with direction to enter judgment requiring the respondent or his successor in office to register said warrant as provided by law and as prayed for herein.

Affirmed as modified.

By the Court: It is so ordered.