(95 South. 498)

## BOARD OF EDUCATION OF ESCAMBIA COUNTY v. WATTS. (3 Div. 407.)

(Court of Appeals of Alabama. April 4, 1922. Rehearing Denied May 30, 1922.)

1. Judges ⬅14, 16(1)—Judge not disqualified by acting at request of presiding judge.

Code 1907, § 3300, which provides that circuit judges may hold court for one another when they deem it expedient is not repealed by later legislation as to judges, and under it, a circuit judge is not without legal right to preside at a trial because he was requested to hold court in the venue county by the presiding judge of that circuit, instead of being designated by some other method.

2. Judges ⬅29—Jurisdiction of circuit judges coextensive with state.

Circuit judges have and may exercise the same official authority and power in any county, and their jurisdiction is coextensive with the state.

3. Schools and school districts ⬅114—County board of education is quasi corporation, with implied right to be sued.

Under Acts 1919, p. 567, art. 5, a county board of education is an independent governmental agency, and a quasi corporation, with right to sue and the implied right to be sued.

4. Estoppel ⬅68(2)—One claiming that part of statute is controlled by another section estopped from denying that other section does not control in other applicable particulars.

Where one, alleged to have been appointed a school principal by a county board of education, relied on Acts 1919, p. 567, art. 5, § 26, as basis for argument that the board of education was a quasi corporation and subject to his suit growing out of an obligation under the powers contained in section 12, he will not thereafter be heard to say that section 26 does not relate to and govern section 12 in other particulars.

5. Schools and school districts ⬅135(1)—County board of education may not appoint principal until recommended by superintendent of education in writing.

Under Acts 1919, art. 5, § 12, the county board of education has no power to appoint until a principal has been recommended in writing by the superintendent of education, and the nomination of a principal, as required by School Code, Acts 1919, p. 590, art. 6, § 14, is essential to give the board authority to act, without which no obligation either express or implied can arise by its nonaction.

6. Schools and school districts ⬅135(1)—In selecting principals, county board of education must act as board, not as individuals.

In view of School Code, art. 5, §§ 1, 3, 5, which places the administration of powers delegated to it in the school board and not in the individuals composing the board, and requiring formal meetings and the keeping of records, in the selection of principals and teachers, the board must act as a board and not as individuals.

7. Schools and school districts ⬅135(4)—No writing required for contract between board and school principal, except in records kept by board.

The only requirement of the School Code that a contract between a county board of education and a high school principal be in writing appears in the sections requiring records to be kept by the board.

8. Schools and school districts ⬅135(5)—Resolution ratifying selection of principal relates back to original employment.

Where the selection of a school principal by the county board of education is irregular, and by resolution the selection is ratified, such act relates back to the original employment.

9. Schools and school districts ⬅144(1)—School principal rendering service without contract cannot recover reasonable compensation.

One who has rendered services as school principal to a district may not recover reasonable compensation therefor, unless he has a contract or agreement with the board in regard thereto.

10. Contracts ⬅27—Implied contract cannot arise, unless party to be charged legally authorized to contract.

An implied contract cannot arise, unless the party sought to be charged is legally authorized to contract, and an implied obligation to pay for services rendered can never exist, unless the party for whom the services were rendered was at the time legally authorized to contract for them.

11. Schools and school districts ⬅135(1)—Principal of school charged with knowledge that other agents of state may contract with him as such only as authorized.

Under the school law, the principal of a school is an agent of the state for the purpose named in the law, and accepts the agency subject to statutory limitations, and is charged with knowledge that other agents of the state may not contract with him as such except as they have authority.

Appeal from Circuit Court, Escambia County; Arthur E. Gamble, Judge.

W. W. Watts sues the County Board of Education of Escambia County in assumpsit, to recover for work and labor done as a school teacher. From a judgment for the plaintiff, defendant appeals. Reversed and remanded. Certiorari denied. Ex parte W. W. Watts, 209 Ala. 115, 95 South. 502.

Steiner, Crum & Weil, of Montgomery, F. L. Tate, of Wetumpka, and Leon G. Brooks and G. W. L. Smith, both of Brewton, for appellant.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The special judge had no authority to preside without appointment by the Chief Justice. Acts 1915, p. 593; 197 Ala. 457, 73 South. 92; 171 Ala. 144, 54 South. 504; 126 Ala. 74, 28 South. 741, 30 South. 554. There was a failure of compliance with section 14 (p. 590) of the act of 1915 (Acts 1915, p. 590), and the contract was void. 203 Ala. 575, 84 South. 816; 206 Ala. 312, 89 South. 457; 132 Ala. 252, 31 South. 87, 90 Am. St. Rep. 904; 114 Ala. 488, 21 South. 467; 130 Ala. 379, 30 South. 445; 197 Ala. 139, 72 South. 410; 205 Ala. 103, 87 South. 345; 177 Ala. 317, 58 South. 193. If the plaintiff, in order to recover, must trace his right through a violation by him of positive law, the courts will not lend their aid to reimburse the loss. 174 Ala. 184, 56 South. 802; 170 Ala. 415, 54 South. 95, Ann. Cas. 1912D, 652; 175 Ala. 401, 57 South. 814.

Hamilton, Page & Caffey, of Brewton, for appellee.

Judges of circuit courts may hold court for one another when they deem it expedient. Const. 1901, § 144; Code 1907, § 3300; 175 Ala. 416, 57 South. 486; 60 Ala. 80; 17 Ala. 440. An unauthorized contract with a teacher may be ratified by those having authority to do so, either expressly or by acts in recognition of the employment. 50 Okl. 343, 150 Pac. 1106, L. R. A. 1915F, 1047; 35 Cyc. 1085; 24 R. C. L. 615; 7 R. C. L. 947; 126 Tenn. 223, 148 S. W. 680, L. R. A. 1915A, 1023, Ann. Cas. 1918E, 25. The statutory provisions as to the manner of contracting with teachers are not mandatory, but merely directory. 49 Ala. 43; 144 Ala. 269; 40 South. 306; 144 Wis. 620, 129 N. W. 940, 140 Am. St. Rep. 1043; 24 R. C. L. 615. A teacher, who has rendered services, may recover reasonable compensation, even though he had no contract. 67 Vt. 150, 31 Atl. 145, 27 L. R. A. 588; 77 Or. 30, 150 Pac. 251, Ann. Cas. 1917A, 252; 114 Ala. 433, 21 South. 960; 169 Ala. 539, 53 South. 793; 131 Ala. 204, 31 South. 554; 98 Ala. 461, 13 South. 368; 73 Ala. 295, 49 Am. Rep. 51.

SAMFORD, J. [1, 2] The first contention is that Judge A. E. Gamble, judge of the Second judicial circuit, who presided at the trial, was without legal right to do so, for the reason that he was requested to hold the court in Escambia county by Hon. John D. Leigh, the presiding judge of the circuit, instead of having been designated by some other method prescribed in other statutes. It has too long been the accepted law of this state, to now admit of controversy, that circuit judges have and may exercise the same official authority and power in any county of this state and that their jurisdiction is coextensive with the state. Brue v. McMillan, 175 Ala. 416, 57 South. 486. And section 3300 of the Code of 1907, providing that they may hold courts for one another when *they* (italics ours) deem it expedient, is not repealed, and in no wise limited, by later statutes providing for the shifting of judges, under certain conditions, by the Chief Justice of the Supreme Court. All these other statutes referred to and cited, in appellant's briefs, have separate and independent fields of operation, not conflicting with section 3300 of the Code, and under which Judge Gamble was presiding over the circuit court of Escambia county at the time of the trial of this case. The evidence on this point was that Judge Leigh was disqualified in several cases pending in the court and requested Judge Gamble to hold and preside at the term of the court at which this cause was tried. Judge Gamble organized the court and was its presiding judge for that term. The case of Darling v. Hanlon, 197 Ala. 457, 73 South. 20; Mann v. Darden, 171 Ala. 144, 54 South. 504; Roberts v. State, 126 Ala. 74, 28 South. 741, 30 South. 554, are not in point and the contention of appellant is not well founded.

[3] It is next insisted that the county board of education of Escambia county is not a body corporate and cannot be sued. This question was made the subject of controversy in Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 South. 774, and there it was correctly held, as we think, that, under the general school law (Acts 1919, p. 567, art. 5), the county board of education is an independent governmental agency, and that such board is a quasi corporation, with the right to sue and the implied right to be sued. Askew v. Hale County, 54 Ala. 639, 25 Am. Rep. 730; Mobile County v. Kimball & Slaughter, 54 Ala. 56.

[4] We next come to a consideration of the contract, either expressed or implied, the basis of two counts of the complaint, and the right to recover on a quantum meruit, the basis of the claim under the common count. On the threshold of this proposition we are met with the fact that, under the general school law (Acts 1919, p. 567, art. 5), the county board of education is a limited governmental agency, deriving all of its power from the act of the Legislature creating it. It should do as much as, but can do no more than, the act provides, and if not contained in the act, it would be usurpation of power for the courts to read something into the act not therein contained. McNalty v. Board of School Directors, 102 Wis. 261, 78 N. W. 439, Section 26, art. 5, provides:

"It shall have power to sue and contract, all contracts to be made after resolutions have been adopted by the board and spread upon its minutes."

Upon this clause is based the appellee's argument, that the board of education is a quasi corporation and subject to his suit growing out of an obligation arising under

the powers contained in section 12, art. 5, which argument he has made, and he will not now be heard to say that section 26 does not relate to and govern section 12 in other particulars. In other words, if section 26 authorizes a suit for the breach of an obligation growing out of the power contained in section 12, it will also govern the powers contained in section 12, wherever applicable. Section 12, art. 5, provides:

"The county board of education shall appoint, upon the written recommendation of the county of superintendent, all principals," etc.

[5] It was once the law in this state that the Senate should elect a railroad commissioner from three names sent to it by the Governor. Suppose the Senate, without receiving these names, had proceeded to the election of a railroad commissioner, would any one contend for a minute that such person could hold or be entitled to the emoluments of the office? Other illustrations might be multiplied. Under this statute (section 12), the county board has no power to act until a principal has been recommended in writing by the superintendent of education. The power of selection is joint, and until the superintendent has nominated a principal as required by article 6, § 14, of the School Code (Acts 1919, p. 590), there is no occasion for action on the part of the county board of education, and a mere failure to act cannot be construed into a waiver of anything or into an implied contract. In Montgomery County v. Barber, 45 Ala. 242, in deciding that counties may make contracts as individuals or other corporations, the point was impressed that this was only so, where the mode and manner of contracting was not prescribed, or the persons or agents by and with whom contracts are to be made, and this view was upheld and further emphasized in Coleman v. Town of Hartford, 157 Ala. 550, 47 South. 594. In the case of Pearson v. School District 8. 144 Wis. 620, 129 N. W. 940, 140 Am. St. Rep. 1043, cited by appellee, the power of selection was alone in the board and not as here, jointly with the superintendent, and that case, as well as all the other authorities from the courts of that state, cited in the dissenting opinion, hold that the board has no power to act otherwise than as provided by statute, and the authorities cited from the Supreme Court of this state both relate to construction of election statutes, where it is said:

"The courts, in order to give effect to the will of the majority, and to prevent the disfranchisement of legal voters, have uniformly held those provisions to be formal and directory merely, which are not essential to a fair election, unless such provisions are declared to be essential by the statute itself."

Montgomery v. Henry, 144 Ala. 629–633, 39 South. 507, 508 (1 L. R. A. [N. S.] 656, 6 Ann. Cas. 965). The nomination of a principal of a school by the county superintendent to the county board is essential to give the county board authority to act, without which no obligation, either expressed or implied, can arise by its nonaction. The formal manner of presenting the nomination *in writing* might be waived by the board, but not the nomination.

[6] Again, section 1, art. 5, of the School Code, places the administration of powers delegated to it in the school board and not in the individuals composing the board, and section 3 of the same article further emphasizes this by providing for formal meetings and formal rules for its government, and section 5 provides for the keeping of its records, etc., by its secretary. Where this is the law, the great weight of authority is to the effect, that, in the selection of principals and teachers of schools, the board must act as a board and not as individuals. It would make no difference what one or more of the members said or did with reference to a school matter outside and at another time, it is only when acting in conjunction with the other members of the board and at a meeting thereof, that they can in any way bind the board. In Ryan v. Humphries, 50 Okl. 343, 150 Pac. 1106, L. R. A. 1915F, 1047, which seems to be a leading case on the subject, the court held:

"A public body, such as a school board, consisting of several persons, authorized to perform acts of a public nature, and to which public duties are intrusted, such as the employment of teachers for the public schools, should perform such duties as a board, and to do so it is imperative that all should meet, or at least be notified, of such meeting, and have an opportunity to meet together to consult over the employment of such teachers, before a valid contract can be entered into by them binding the district."

This view is upheld in a long line of authorities listed in L. R. A. 1915F, 1047 et seq. And in City of Mobile v. Mobile Electric Co. and authorities there cited, it is held that:

"When the statute or charter prescribed a particular mode for the execution of such contracts, that mode is exclusive and must be pursued, or the contract will not bind the corporation." City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 South. 816.

[7] We have searched diligently, and nowhere in the statute do we find a requirement that the contract between a county board of education and a principal of a school shall be in writing, other than appears in the various sections requiring records to be kept by the board. When such contract is entered into and signed by the parties, in accordance with rules and regulations promulgated by the duly constituted school authorities, it

becomes evidence of the contract authorized by statute.

From the foregoing we conclude: That, in order for a principal of a school to have a binding claim against the county board of education, entitling him to be paid for services rendered as such principal, out of the public funds, he must have been nominated for such principalship, to the board, by the county superintendent, and that nomination confirmed by the board in session, by resolution or motion and fixing the amount of compensation to be paid (24 R. C. L. 615, § 72), and when this is done such principal is entitled to act during the pleasure of the board, who may cancel the employment at any time, for any of the reasons set out in section 12, art. 5, of the Act, by resolution duly adopted and, on notice of which to the principal, all obligation of the board ceases.

[8-10] We conclude further that, if for any reason the selection of the principal is irregular and by resolution the selection is ratified, such act relates back to the original employment. Such is the rule declared and set forth in Ryan v. Humphries, 50 Okl. 343, 150 Pac. 1106, L. R. A. 1915F, 1047, and which we here approve—and we go further. If, in attempting to carry out the requirements of the statute relative to the selection of a principal of a school, there were omissions as to directory details, such as would prevent the principal from recovering on the contract, and he had rendered the services and the board had knowingly received them, the principal might still recover for work and labor done. But, we cannot subscribe to the doctrine that one who has rendered services as school principal to a district may recover reasonable compensation therefor, even though he had no contract or agreement with the board in regard thereto, as is contended for in this case. Such contention is contrary to the fixed policy of this state in regard to the management of its public school system, and to so hold might seriously interfere with the orderly management of the public schools, as is provided in the School Code adopted by the Legislature. Acts 1919, p. 567 et seq. An implied contract can never arise unless the party sought to be charged is legally authorized to contract, and an implied obligation to pay for services rendered can never exist unless the party for whom the services were rendered was at the time legally authorized to contract for them. In all of the cases cited in appellee's brief, in support of the above contention, the parties were legally authorized to contract with one another at the time the implied contract arose.

[11] There is in this case a perfect mass of pleading, including the whole catalogue of common-law pleas through rejoinder, of which last alone there were ten, and in support of this pleading a vast array of testimony. Most of this pleading was entirely unnecessary, and a large amount of the testimony was immaterial to any legal issues in the case. Under the school law the principal of a school is an agent of the state for the purposes named in the law, and accepts the agency, subject to all the limitations named in the statutes, and is charged with a knowledge of the fact that other agents of the state may not contract with him as such, except as they have authority under the statute. The issues, therefore, are simple, and require little pleading to present them to the court. Was the plaintiff nominated by the county superintendent of education of Escambia county as principal for East Brewton school, to the board of education of Escambia county, and did the said board receive such nomination and, acting on it in a legal meeting of the board, appoint plaintiff as school principal for East Brewton school, at a compensation then fixed by resolution or motion of the board, and, if so, did the plaintiff render the services as such principal, at the time and at the place named? If so, and he has not been paid, he would be entitled to recover the amount as named in the resolution, unless the board, acting under authority of section 12, art. 5, of the school law, terminated the contract by suspending or dismissing the plaintiff, in which event he could only recover for the time he actually served. Or did the superintendent of education agree with the plaintiff that he should be appointed principal of East Brewton school, and on September 20, 1920, plaintiff took charge and began acting as such and subsequently thereto and while he was so acting the superintendent reported same to the board and nominated plaintiff to the board and the board being in session ratified said agreement and appointed plaintiff on the terms agreed upon? If so, the ratification relates back to the beginning of the term, and plaintiff could recover in accordance with the terms of the appointment, unless subsequently he was dismissed by the board in accordance with the statute. Or did the superintendent and the board attempt to make the appointment, but its acts were irregular? Then the plaintiff would be entitled to recover for such time as he actually served and his services were accepted by the duly constituted school authorities; but in no event would the plaintiff be entitled to recover for services, beyond the time his services were legally dispensed with by the action of the board, of which he had notice.

Without specifically pointing out the error, the rulings of the trial court on the pleadings and the admission of evidence were not in accord with the foregoing views, and, on account of such errors, the judgment is reversed, and the cause is remanded.

Reversed and remanded.