**Dwight ARMSTRONG et al., Plaintiffs,**

**United States of America,
Plaintiff-Intervenor,**

**Gregory John Katopodis,
Plaintiff-Intervenor,**

v.

**The BOARD OF EDUCATION OF the
CITY OF BIRMINGHAM, ALABAMA,
et al., Defendants.**

**Civ. A. No. 9678.**

United States District Court,
N. D. Alabama, S. D.

April 14, 1977.

Drayton Nabers, Jr., George G. Lynn and Cathy S. Wright, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for plaintiff-intervenor Gregory John Katopodis.

William G. Somerville, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant Board of Education.

U. W. Clemon Adams, Baker & Clemon, Birmingham, Ala. (Mr. Clemon participated in this proceeding only to the extent that he had no objection to the intervention of Gregory John Katopodis), on behalf of plaintiffs, Dwight Armstrong et al.

## MEMORANDUM OPINION

GUIN, District Judge.

This cause came on to be heard on the stipulated facts and the briefs of the intervening plaintiff [1] and the defendant, Birmingham Board of Education ("Board"), and was submitted for summary adjudication pursuant to Rule 56 of the Federal Rules of Civil Procedure on certain stipulated issues. The stipulated facts show that the intervening plaintiff, Gregory John Katopodis ("Plaintiff"), was employed by the Board as Special Assistant to the Superintendent on July 1, 1975. He continued to be employed as a professional assistant to the Superintendent in this position until January 31, 1977, at which time he was fired by the Board.

Thereafter, he filed this action claiming, among other things, that the action of the Board in firing him was in excess of the Board's statutory authority; was a breach of contract; was in violation of certain

1. Intervention was sought and allowed in this school desegregation case for the City of Birmingham schools under the authority of *Hines v. Rapides Parish School Board*, 479 F.2d 762 (5th Cir. 1973); *Davis v. Board of School Comm'rs of Mobile County*, 517 F.2d 1044 (5th Cir. 1975).

provisions of the desegregation plan adopted by the Board in this case; and was in violation of his rights under the Fourteenth Amendment of the United States Constitution. The stipulated facts relate only to whether the Board action relating to the termination of his employment exceeded the Board's statutory authority.

The stipulated facts show that the firing of the plaintiff came after an extensive budgetary review made by the Board. On October 12, 1976, the Board approved its "Annual School Budget." Shortly thereafter it was submitted to the State Superintendent of Education, as required by Title 52, § 241, CODE OF ALABAMA 1940 (Recomp. 1958), and thereafter on March 14, 1977 was approved by him. This budget contained an appropriation for the funding of plaintiff's job as Special Assistant to the Superintendent through June 30, 1977.

Immediately after it approved and submitted its annual budget, the Board began its budgetary review, and, in connection with the review, the Board's Superintendent recommended certain revisions to the budget. The Board accepted some of the Superintendent's recommended revisions and rejected others. Relevant here, the Board resolved to eliminate the position of Special Assistant to the Superintendent held by the plaintiff. The Superintendent did not recommend that the position of Special Assistant to the Superintendent be eliminated.[2]

Because this Board action deprived plaintiff of his job, the Superintendent subsequently recommended that the plaintiff be moved to the job of Coordinator of ESAA (Emergency School Administrative Act)

Special Project Grant. The Board rejected the recommendation and formally discharged the plaintiff from employment.

The plaintiff claims on the basis of the stipulated facts that the Board action outlined above exceeded its authority, both in the Board's attempts to abolish plaintiff's position as part of its budgetary amendments and in firing him.

The statutory framework[3] directly relevant is as follows:

§ 158. *Authority of city board of education.*—The city board of education is hereby vested with all the powers necessary or proper for the administration and management of the free public schools within such city and adjacent territory to the city which has been annexed as a part of the school district which includes a city having a city board of education.

§ 164. *Assistants to city superintendent of schools.*—The city board of education shall, upon the recommendation of the city superintendent of schools, employ such professional, clerical, accounting and statistical assistants as, in the judgment of the board, are necessary.

§ 165. *Dismissal of employees.*—The city board of education shall fix the salaries of all employees and may suspend or dismiss any principal or teacher or supervisor or attendance officer or other regular employee so appointed on the written recommendation of the city superintendent of schools, for immorality, misconduct in office, incompetency, wilful neglect of duty, or when, in the opinion of the board, the best interests of the schools may require, subject to the provisions of chapter 13 of this title.

---

**2.** The stipulated facts recite that "The Superintendent did not recommend that the position of Special Assistant to the Superintendent be eliminated, unless it was by virtue of his actions expressed in Exhibit 7." Exhibit 7 shows that the Superintendent recommended to the board the following: "Assign Special Assistant to the Superintendent primary responsibility for coordinating ESAA Special Projects grant and charge salary to vacancy in that grant." The Court cannot conclude that the recommendation that certain functions be assigned to the

Special-Assistant-to-the-Superintendent position can in any way be construed to be a recommendation that the position be abolished. If anything, the action of the Superintendent reflected in Exhibit 7 is precisely the opposite—a recommendation that the job of Special Assistant to the Superintendent not be abolished but continued, though with somewhat different responsibilities and funding.

**3.** All section references herein are to Title 52, Code of Alabama 1940 (Recomp. 1958).

§ 241. *When budget is official.*—A budget shall become official and shall be followed in the matter relating to the financial operation of the schools of any school system when it has been prepared by the superintendent of education and approved by the county or city board of education, as the case may be, in accordance with the conditions prescribed above, and when a copy has been filed with and approved by the state superintendent of education. The state superintendent of education shall not approve the expenditure of public funds for the salaries of teachers unless said teachers hold valid teaching certificates and have been nominated in writing by the county or city superintendent of education and appointed by the county or city board of education, as the case may be. A county or city superintendent of education with the approval of his board shall have authority during the fiscal year to make such changes within the budget as are deemed desirable, provided that schools are operated for the state minimum term according to rules and regulations of the state board of education and provided that a deficit is not incurred by such change or changes. No school board shall be entitled to receive any school funds apportioned by the state board of education for any fiscal year until that school board has filed a budget for that fiscal year with the state superintendent of education, which budget has been approved in accordance with the provisions of this article.

These provisions must be interpreted against the backdrop of a comprehensive statutory scheme contained largely in Chapters 8 (City Board of Education) and 9 (City Superintendent of Schools) of Title 52 fixing the relation and responsibilities of the Board and Superintendent and establishing a working interrelationship between the two. The provisions of these Chapters make clear beyond doubt that though the Board is granted broad authority by § 158 "for the administration and management of the free public schools," this authority for the most part must be exercised in concert with the recommendations of the Superintendent. For example, the Board cannot hire employees (§ 164, § 182), dismiss employees (§ 165), determine educational policy (§ 166), petition the City Council to call an election for the issuance of bonds (§ 169), promote or suspend employees (§ 187), or adopt or amend its budget (§ 241), without the recommendation or consent of the Superintendent. Nor may the Board enter into any contract "of whatever kind" without the Superintendent's approval in writing (§ 184).

As the Board's enabling statute prescribes no qualifications for Board members other than residency and "character and fitness" (§ 151), it is not to be expected that the members of the Board will bring great educational expertise to the management of the schools. On the other hand, the statute provides that the Superintendent shall be a professional educator with a background in school administration (§§ 178, 178(1)). It is thus provided that the professional and expert advice upon which the Board may act is to come from the Superintendent and his professional assistants (§ 166). The Board, composed of non-professional personnel, not unexpectedly, therefore, is only rarely granted authority by Title 52 to unilaterally plot a course of action for the school system contrary to the recommendation of the Superintendent.

Moving to the issues which must be decided within this statutory framework, the plaintiff claims that § 165 prohibited his being fired without the recommendation of the Superintendent, which the parties have stipulated was never given. The plaintiff contends further that under § 241, any effective change to the annual school budget must have been made initially by the Superintendent, with the Board's only participation being to approve or disapprove the change; and, therefore, the Board exceeded its authority by unilaterally eliminating the funding for plaintiff's job in the manner in which it did, without the Superintendent's express consent.

■ The Board does not advance any persuasive argument, nor could it, that it

had the power to dismiss the plaintiff directly (as opposed to indirectly by eliminating his job) without the Superintendent's recommendation. Under § 165 there can exist no legitimate doubt that the Board has no power to directly fire a professional assistant to the Superintendent such as the plaintiff without the Superintendent's written recommendation, which was not given in this case. The Board therefore exceeded its statutory authority when it dismissed the plaintiff from employment.

Nor can the Board successfully contend that it has the power to unilaterally amend the "annual school budget" without the recommendation or at least the consent of the Superintendent. Under the provisions of § 241, the Court is clear in its opinion that the Board has no such power and, therefore, that it exceeded its authority in eliminating the funding for the plaintiff's job without the Superintendent's consent after it had adopted and submitted its annual budget.

Rather than concentrating on the above points, the Board launches its argument on the basic premise that it makes no difference whether the Board had the authority to fire plaintiff directly or to amend the budget to abolish the funding for his job in the manner in which it did.

Rather, what the Board vigorously asserts is that it had authority to abolish plaintiff's job, which it did, by a lawfully adopted resolution, and if incidentally this had the effect of dismissing the plaintiff, there is nothing in § 165 or § 241 or any other provision of Title 52 which limits the Board's authority to so dismiss a professional assistant to the Superintendent. According to the Board's position, the acts of the Board beyond abolishing plaintiff's job, of formally dismissing plaintiff and amending the budget to eliminate funding for the plaintiff's job, were surplusage and beside the point.

The Board's argument begins with § 158, which it contends is "unquestionably ample" to vest in the Board "alone" the power to abolish whatever job positions the Board deems unnecessary. The Board then turns to § 164, on which it places primary reliance, which it claims gives the Board implied authority to abolish any job position such as that of the plaintiff, which it deems unnecessary.

 The Court concludes that neither § 158 nor § 164 vest in the Board the power to dismiss a professional assistant to the Superintendent, such as the plaintiff, from employment by the expedient of abolishing his job position. The starting point for this conclusion is the general proposition that a school board such as the Board is the creature of statute, that its authority is limited to that specifically conferred upon it by statute, and that it has no power to act except in accordance with those procedures which may be prescribed by statute. *County Board of Education v. Slaughter*, 230 Ala. 229, 160 So. 758 (1935); *Board of Education v. Watts*, 19 Ala.App. 7, 95 So. 498 (1922), *cert. denied*, 209 Ala. 115, 95 So. 502 (1923). Though the Court does not find that the above-stated precepts proscribe the existence of implied powers in the Board, it is of the firm opinion that no authority may correctly be implied which contravenes explicit limitations of Board authority elsewhere contained in the statute.

Thus, though it may be granted that § 158 gives the Board broad general power to administer the school system, a plethora of other provisions establish that this power must be exercised only in concert with the Superintendent. Section 165 explicitly provides that the Board cannot unilaterally "dismiss" the Board's professional assistants without the written recommendation of the Superintendent. To infer from §§ 158 and 164 the implicit authority to indirectly dismiss the professional assistants of the Superintendent when he steadfastly declines to recommend their dismissal would render the explicit protections which § 165 provides the Superintendent's professional staff meaningless.

It is the Superintendent and not the Board who must recruit the personnel for his professional staff, who sees their work daily, who knows their relative strengths and weaknesses, and who is ultimately responsible for their accomplishments or fail-

ures. To authorize the Board to ignore the Superintendent's recommendation regarding their dismissal, whether it be direct or indirect, would be counter-productive at the very least. But in any event there is no justification for implying Board authority to reject the Superintendent's recommendation and dismiss the members of his staff by abolishing their jobs, when the legislature has explicitly prohibited the Board from dismissing members of the Superintendent's staff without the Superintendent's recommendation.

The Board argues that the power to unilaterally eliminate job positions such as plaintiff's regardless of the Superintendent's recommendation is essential if it is to properly perform its responsibilities in running a fiscally sound school system. Though this is a policy argument which might be argued to the legislature in order to seek an amendment to Title 52, the Court finds it unconvincing as an argument militating against its interpretation of §§ 158, 164 and 165. The same argument could be advanced regarding the issuance of bonds for the school system, which process under § 169 can be initiated only upon the recommendation of the Superintendent; the process of amending the budget, which under § 241 is done by the Superintendent with the approval of the Board; or the execution of any contract, which under § 184 can be done only with the Superintendent's written approval. Moreover, this Court cannot interpret Title 52 on the premise assumed by the Board in advancing this argument that the superintendent will act irrationally or in a manner not supportive of the best interests of the school system. Such an assumption contradicts the basic premise embodied in Title 52 that the Superintendent is to be a guiding influence on a Board which is not expected to understand the operations or management of a school system as well as the Superintendent. The workability of Title 52 is premised on the existence of a healthy and constructive interrelationship between the Board and the Superintendent, and this Court will not judicially disturb the "checks and balances" carefully engrafted into this scheme by the state legislature. It would not therefore be proper to erode the express limitations of the Board's authority requiring it to act in concert with the Superintendent on the premise that the Superintendent may not act in the best interests of the school system.

The Board relies heavily on and discusses at length two Alabama cases, *Oldham v. Mayor and Aldermen of Birmingham*, 102 Ala. 357, 14 So. 793 (1893), and *Clements v. Commission of City of Birmingham*, 215 Ala. 59, 109 So. 158 (1926), which it contends conclusively establish its power to fire plaintiff by eliminating his job. In *Oldham*, the Board of Mayor and Aldermen of Birmingham acting as a legislative body eliminated the job of police sergeant, thereby depriving plaintiff of employment; and in *Clements* the legislative department of the City of Birmingham eliminated the job of municipal surgeon, depriving the plaintiff of employment. In both cases it was contended by the plaintiff-employee that protections accorded by an entirely different statute from that establishing the authority of the municipal legislative body to eliminate his job prevented the indirect dismissal of the employee.[4]

In neither case was it contended that the statute creating the municipal legislative body did not give that body plenary power to eliminate the job positions involved, even if such resulted in the effective dismissal of the employees.[5] In both cases the Alabama Supreme Court held that the separate stat-

---

**4.** In *Oldham* the legislation was an act of the Alabama legislature establishing a Board of Police Commissioners for the City of Birmingham, which Board was given the power to fire police officers in accordance with certain prescribed procedures; in *Clements* the legislation was the Civil Service Act of 1923.

**5.** In *Oldham*, for instance, the Board of Mayor and Aldermen, had the statutory power "to determine what officers and policemen are necessary for the good government of the city . . . .," 102 Ala. at 367, 14 So. at 795, and police officers such as the plaintiff served their terms "at the will of the Board," 102 Ala. at 368, 14 So. at 796.

ute according certain employment protection to the plaintiffs did not limit the authority of the legislative bodies to eliminate their jobs.

In this case the limitation on the Board's authority relied on by the plaintiff is in the Board's enabling statute and, in fact, is contained in the section immediately following the provision on which the Board places its primary reliance in contending that it has implied authority to eliminate plaintiff's job. Thus, this Court does not have the task present in *Oldham* and *Clements* of reconciling a broad grant of legislative power to a municipal legislative body with a separate statute according certain employment protections to municipal employees. Rather, the task before the Court is to interpret a single, all-inclusive statute which creates a working interrelationship between a school board and its superintendent and which explicitly protects employees such as plaintiff from being deprived of employment by the Board absent a contrary recommendation of the Superintendent. Thus, the Court finds neither *Oldham* nor *Clements* to be controlling authority.

Furthermore, *Oldham* and *Clements* involve the exercise of legislative power, while the power possessed by the Board is executive. The line of cases relied upon by the Board to support its view repeat the refrain of "legislative authority" in upholding dismissal of employees through abolition of their job positions. That line of cases is inapt where, as here, the authority in question is executive.

The case most closely on point which has been cited to the Court is *State ex rel. Parker v. Vernon Parish School Board*, 222 La. 91, 62 So.2d 111 (1952). In that case the plaintiff school teacher took a military leave of absence from his position as a teacher. On his return from military service he returned to the school system for a one-year term as a supervisor. At the beginning of the following school year, plaintiff was informed by the superintendent that his "job had been abolished and his services were not desired." 62 So.2d at 113. The Louisiana Supreme Court, reversing a lower court judgment for the school board, held that under a statute requiring the written recommendation of the superintendent for the dismissal of a probationary teacher such as the plaintiff therein, the school board was powerless to dismiss plaintiff by the simple expedient of abolishing his job.

■ Having decided that the Board exceeded its statutory authority in dismissing the plaintiff either directly or indirectly by abolishing his job and in amending the annual school budget to eliminate the funding for his job, the question becomes whether plaintiff is entitled to the remedy of reinstatement with back pay. The Court concludes that he is.

Courts in Alabama and other jurisdictions have uniformly held that when a school board attempts to perform an act which exceeds its authority, that act is ineffective and the matter remains in the *status quo* as though the board had never attempted to act. *County Board of Education v. Slaughter*, 230 Ala. 229, 160 So. 758 (1935); *Board of Education v. Watts*, 19 Ala.App. 7, 95 So. 498 (1922), *cert. denied*, 209 Ala. 115, 95 So. 502 (1923).

Moreover, the Alabama courts have established that reinstatement with back pay is an appropriate remedy where a teacher has been discharged in violation of statutory rights. *Williams v. Board of Education of Lamar County*, 263 Ala. 372, 82 So.2d 549 (1955); *County Board of Education of Clarke County v. Oliver*, 270 Ala. 107, 116 So.2d 566 (1959).

Courts in other jurisdictions have consistently held that when a school board attempts to act without a written recommendation from the superintendent of schools, as required by statute, the act of the board is without effect and the parties are returned to the position they occupied prior to the board's *ultra vires* act. *See Lemasters v. Willman*, 281 S.W.2d 580 (Mo.App.1955); *Application of Board of Education, etc.*, 283 App.Div. 376, 128 N.Y.S.2d 155 (1954); *Board of Education v. Nyquist*, 78 Misc.2d 544, 357 N.Y.S.2d 370 (1974).

As the relevant facts have been stipulated and there is no dispute as to any material fact, the Court concludes that plaintiff is entitled to summary judgment ordering his reinstatement as Special Assistant to the Superintendent, with full back pay from January 31, 1977.[6]

6. In allowing the intervention of the plaintiff herein, this Court reserved a ruling on whether it would allow presentation of state law claims. Upon consideration of the stipulated facts and issues presented thereon, it was clear that by ruling on the pendent issues the Court would avoid trying the constitutional issues and issues relating to the Board's desegregation plan presented by the Complaint in Intervention. Thus, the Court has exercised its discretion to decide the pendent issues and thereby avoid the very considerable time and expense which would be required to try the federal issues.