160 So. 758

## COUNTY BOARD OF EDUCATION v. SLAUGHTER.

### 5 Div. 195.

Supreme Court of Alabama.
March 28, 1935.

230

C. S. Moon, of LaFayette, and Denson & Denson, of Opelika, for appellee.

Jas. W. Strother, of Dadeville, for appellant.

KNIGHT, Justice.

Suit by G. W. Slaughter, plaintiff in the court below, against the county board of education of Chambers county.

The plaintiff stated his cause of action in four counts. We can well treat the case, on this appeal, as fully presented by count three, which declares upon a promissory note, executed by the county board of education to the plaintiff. However, as against defendant's demurrer, each of the counts were sufficient, each being in the form prescribed by the Code.

The pleadings in the case are voluminous, consisting of many pleas, replications, and rejoinders, with demurrers to all the pleas (except the plea of the general issue), replications, and rejoinders. However, as we view the case, the only pleading necessary to a proper determination, were the complaint and defendant's plea that the note was without consideration.

There is but little, if any, real conflict in the evidence.

The board of education undertook to secure a loan of $1,500 from Dr. Slaughter, and in order to obtain the loan, the board, on March 1, 1933, executed a promissory note, payable to Dr. Slaughter on March 1, 1934. The note was signed by the board of education, by S. H. Oliver, president, and attested by G. M. Barnett, as secretary. This note was delivered by the board to D. T. Tatum, who was at the time the treasurer of the school board of Chambers county, to be delivered to Dr. Slaughter upon the payment by him of the money to the treasurer.

It appears, without conflict in the evidence, that Mr. Tatum was on March 1, 1933, and had been for many years prior thereto, the treasurer of the county school fund, and that he was vice-president of the Bank of LaFayette, and had the general management of the bank's affairs.

On March 1, 1933, between the hours of 1 and 2 p. m., Dr. Slaughter went to the Bank of LaFayette, and at that time Mr. Tatum delivered to him the note sued on, and at the same time wrote out a check on the bank in the sum of $1,500, which Dr. Slaughter signed, and delivered to Mr. Tatum for the note. This check was made payable to the Chambers county board of education. This entire transaction occurred within about an hour and an half before the bank closed on that day. The usual hour of closing of the bank was 3 p. m.

On March 1, 1933, a bank moratorium was declared, notice of which reached the officers of the bank after the bank had closed on that day. After March 1, 1933, the bank never opened again except on a restricted basis, and soon thereafter it was placed in liquidation.

At the time Dr. Slaughter gave his check to Mr. Tatum, he had on deposit in the bank subject to his check about $3,100, and since the closing of the bank Dr. Slaughter has received dividends amounting in the aggregate to $389.12, which represent 12½ per cent. of the total amount he had on deposit at the time the bank closed on March 1, 1933. In paying this dividend, no account was taken of the check for $1,500.

It further appears, without dispute in the evidence, that the check given by Dr. Slaughter to Mr. Tatum was not presented for payment before the bank closed on March 1st. Mr. Tatum on this point testified that he put the check in his pocket; that it could not be paid until indorsed by the president and secretary of the board of education. This was not done.

The testimony further shows that had the check been properly indorsed and presented on March 1, 1933, for payment, it would have been paid. The testimony further shows, without dispute, that no entry was made on the books of the board of education, or of the bank, of the check. That the proceeds of the check were never placed to the credit of the board of education in the bank, nor was the check charged to the account of Dr. Slaughter in the bank; that the balance to his credit remained the same in the bank as though the check had not been drawn. The evidence, in short, shows that the check was never paid, and that the board of education, in fact, did not receive one penny from the transaction.

The court below evidently proceeded upon the theory that the question of liability hinged upon whether the board of education, or the treasurer of the county school funds were negligent in not presenting the check for payment on the day it was drawn and

232

delivered to the treasurer. It was upon this issue that the court submitted the case to the jury.

It is not controverted that the county board of education had the authority for legitimate purposes to borrow money, and pledge the three-mill school tax accruing to the different school districts for the repayment of the loan. Nor is it insisted that the loan that the board of education undertook to secure from Dr. Slaughter was not authorized by law.

The defendant's contention is, in the main, that the loan was never, in fact consummated, and that the note sued on was without consideration.

The contention of the plaintiff, appellee, is that the loan was concluded, when Dr. Slaughter, under the facts in the case, gave to the treasurer of the county school funds his check; that the treasurer had the authority, and was under the duty, to indorse the check, and in view of his knowledge of the condition of the bank, it was his duty to make immediate presentment to the bank for payment. That, under the facts of the case, the acceptance of the check was payment for the note, and if the delay in presenting the check resulted in loss, that loss must be borne by the board of education, and not by Dr. Slaughter.

In the consideration of this case we are not unmindful of the fact that the payee of a check is under duty to the drawer to make due presentment, and laches in the observance of this duty, resulting in loss to the drawer (to the extent of such loss), would operate, pro tanto, as satisfaction of the original debt. Marx & Co. v. Bankers' Credit Life Ins. Co., 224 Ala. 249, 139 So. 421; Deal v. Atlantic Coast Line R. Co., 225 Ala. 533, 144 So. 81; Hendricks v. Jefferson County Savings Bank, 153 Ala. 636, 45 So. 136, 14 L. R. A. (N. S.) 686; Lowenstein v. Bresler, 109 Ala. 326, 19 So. 860; Morris v. Eufaula National Bank, 106 Ala. 383, 18 So. 11; Newell Contracting Co. v. Lacy, 229 Ala. 208, 155 So. 379.

And ordinarily, the payee will make the check his own, if he does not present it for payment within the time permitted by law; the drawer having the funds in the drawee bank out of which the check could be paid, and had it been duly presented. Marx & Co. v. Bankers' Credit Life Ins. Co., supra; Deal v. Atlantic Coast Line R. Co., supra; Lowell Co-operative Bank v. Sheridan, 284 Mass. 594, 188 N. E. 636, 91 A. L. R.

1176; Furber v. Dane, 203 Mass. 108, 112, 89 N. E. 227.

We do not think, however, that this rule has application in the case now before us, no matter what may be the legal rights, if any, of the plaintiff against Mr. Tatum, personally.

The county board of education is a quasi corporation, a governmental agency, created by law, and endowed with certain rights and powers, which are clearly and definitely defined, and, being a creature of the statute, it can exercise only those powers which are expressly conferred upon it, or necessarily incident thereto. Dean v. County Board of Education, 210 Ala. 256, 97 So. 741; Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774; Allred v. Dunn, 207 Ala. 469, 93 So. 390, 391; McNolty v. Board of School Directors, 102 Wis. 261, 78 N. W. 439.

While we have not been cited to the particular section of the School Code, under the supposed authority of which the county board of education sought to borrow the $1,500 of Dr. Slaughter, yet each of the sections which authorizes the board to borrow money, contemplated actual money, and not an exchange of credit. The county board had no authority in law to accept, in lieu of money, a check or draft on a banking institution. It could not bind the revenues of the schools of the county, or of the districts, except in the manner and for the purposes expressed in the statute. The statute contemplates loans of money.

The duties of the treasurer of county school funds are likewise defined by statute, and those duties are to "receive and take charge of any money, fund, or proceeds of any character, which may accrue to the County for public school purposes." Sections 94 and 295 of the School Code. He is merely the custodian of the school funds, charged with the duty of receiving the funds, and of paying the same out on written order of the county board of education, through its executive officer, the county superintendent of education, where such payment is approved by the chairman of the county board of education in writing, and he shall also perform such other duties as may be prescribed by law.

We have been unable to find any provision of law which authorizes the treasurer to accept a check in consummation of a loan made to the board of education. There is no such law, and therefore he must be held to have

no such authority. While he is not in the strict sense of the term a county officer, he is a governmental agent, clothed simply with the right to receive and pay out public funds devoted to, and set aside for, school purposes, and has no discretionary powers.

██ No act of his in accepting the check in lieu of the actual money, and no laches or dereliction of duty on his part in not duly presenting the check for payment can bind the county board of education, or the funds accruing from the three-mill taxes in the designated school districts. Dr. Slaughter, in dealing with Mr. Tatum, must be held to have known the limit of his authority, and that he was transcending the same in taking the check. Spence v. Mobile & Montgomery Ry. Co., 79 Ala. 576.

██ This court is committed to the rule of law that, "in the absence of an agreement otherwise providing, or the consent of the creditor to receive some other medium, payment of a debt may be made only in money." Wadsworth et al. v. State, 225 Ala. 118, 142 So. 529, 530; Morgan Paving Co. v. Carroll, 211 Ala. 121, 99 So. 640; Williams v. Costello, 95 Ala. 592, 11 So. 9.

██ In the case of Wadsworth et al. v. State, supra, the question arose as to whether a debt had been paid to the state, when its treasurer received a check for the debt, and through its agent accepted a check of the drawer in its discharge but failed to collect it, and when by diligence he could have collected cash on the first check. The court held:

"The authority and powers of particular state officers and agents are determined by law, and this cannot be varied or enlarged by usage or administrative construction. 36 Cyc. 865, 872, 873.

"The power of the state to contract is a legislative prerogative, and no officer can contract for it without legislative authority, not even the Governor. Such power must be exercised in manner and form as directed by the Legislature. State v. Cobb, 64 Ala. 127, 153(7); Van Dyke v. State, 24 Ala. 81; Walker v. Chapman, Governor, 22 Ala. 116, 131; Ex parte State, 52 Ala. 231, 235, 23 Am. Rep. 567; Miller v. Swann, 89 Ala. 631, 637, 7 So. 771; 36 Cyc. 879.

"The authority of the state treasurer was to receive cash due it by the tax collector for taxes which he had collected and converted by depositing the money in bank. The state Legislature has given him authority to receive nothing else in payment. Therefore he had no authority to accept one check in payment of another. The checks were only provided as a convenient method of transmitting money. Glenn v. City of Birmingham, supra [223 Ala. 501, 137 So. 292]. But until the money is received for which the check is given, there is no payment except by agreement. The state has made no such agreement. There is therefore no payment."

While the court, in the Wadsworth Case, supra, was dealing with a state officer, the principle underlying that case and the one here under consideration are not dissimilar.

The Legislature provided for a board of education in the several counties of this state, prescribed their duties, and defined their powers. Likewise, the Legislature provided for the appointment or election of treasurers of county and district school funds in the several counties of the state, prescribed their duties, and defined their authority and powers. The treasurer of school funds is a ministerial officer, not clothed with discretionary powers, and nowhere in the law can be found any legislative consent for him to accept a check as a medium of payment of an obligation due to the school fund, and thereby bind the county board of education. His agreement with Dr. Slaughter, expressed or implied, to accept the check as a medium of payment was beyond his powers. This Mr. Tatum and Dr. Slaughter must be held to have known. It is not a question as to whether Mr. Tatum had the right to indorse the check or of whether he was negligent in not making due presentment of the same. But the fundamental and controlling question was and is, Did Mr. Tatum, as treasurer of the county school funds, have the authority to accept the check as a medium of payment? We hold that he did not, and that, inasmuch as the county board of education did not receive the money, for which the note was given, the note was without consideration.

The defendant was due the general affirmative charge requested by it, and the court erred in not so instructing the jury.

In view of the fact that, under the undisputed evidence, there can be no recovery of the defendant in this case, it is unnecessary to consider the other questions presented.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.