134 So.2d 220

**PANTHER OIL AND GREASE MANU-
FACTURING COMPANY**

**v.**

**BLOUNT COUNTY BOARD OF
EDUCATION.**

**6 Div. 807.**

Court of Appeals of Alabama.

Oct. 31, 1961.

Johnson & Randall, Oneonta, for appellant.

St. John & St. John, Cullman, for appellee.

CATES, Judge.

The circuit court, sitting without a jury, found for the defendant school board in an action in which the Panther Company claimed $724.25 due it from the board either by (Count I) account or (Count II) for merchandise, goods and chattels sold.

In May of 1956, Mr. C. B. Phillips, then Blount County Superintendent of Education, was defeated in the Democratic primary. The minutes of the regular meeting of the board held May 8, 1956, with all members present show the following:

"Mr. Cox made a motion that no money be spent for any improvements to a school building or any new equipment until an application had been made to the Board and this application has been accepted and approved by the Board. Mr. Bynum seconded this motion and all members voted for the adoption of the same."

On August 7, September 4, October 30 and November 28, Mr. Phillips signed orders requesting the Panther Company to ship various quantities of wood preserver, paint, "aluminum roof coating" and "green concentrate" charged to the board. Three shipments were to be delivered to the Blountsville Elementary School and the fourth was to be sent to some place in Oneonta, the county seat.

The Panther Company purported to furnish the materials only. Who applied them is not shown.

There was proof from Mr. Phillips and Mr. W. R. Wood, salesman for the Panther Company, that the materials had been applied to school buildings under the control of the board. There was no proof that the board as a body corporate was aware of the delivery of the materials before they were put on the school buildings.

We adopt the opinion of the trial judge which reads:

"This case and several others now pending on the docket of this Court present the question of the authority of the Superintendent of Education of Blount County, Alabama, to purchase articles on his own initiative, and in the exercise of his own judgment, for the schools in the Public School System of Blount County, and the liability, if any, of the Board of Education of Blount County to pay for the same. The good faith and good intentions of the Superintendent, and the good faith of the vendors, are not questions to be decided by the Court.

"The meaning of Act No. 206 of the 1955 Session of the Alabama Legislature has been argued before this Court. The plaintiff places great reliance on this Act.

"This Act does make the Superintendent the Purchasing Agent for the County Board of Education and the County School System. Whenever and wherever an agency is established a principalship is also established. It is clear that the general laws on the subject, as well as Act No. 206, make the County Board of Education the principal. Thus, the question presented is this: What is the legal authority of the agent (Superintendent) to make purchases and bind the principal (County Board of Education) to pay for them, when said purchases are made without the knowledge or approval of the principal.

"The position of the Board (principal) is stated in a motion passed by the Board on May 8, 1956, to the effect that 'No money be spent for any improvements to a building or any new equipment for a school until an application had been made to the Board and this application had been accepted and approved by the Board.' Whether or not this motion was necessary, as a matter of law, is not passed upon. The motion does show a positive attempt on the part of the principal to restrict the agent. By all laws of principal and agent the Board had that authority.

"In the instant case the evidence clearly shows that certain supplies were sold by the plaintiff on order of the Superintendent and shipped to schools in the Blount County School System. The evidence also shows that all or part of these supplies were used in the schools of the County and it is logical to assume that these schools derived some benefit from such use.

"The evidence also shows that the Superintendent prior to May 8th, 1956, on three or four occasions had placed orders with the plaintiff and that the defendant Board of Education had paid the bills promptly.

"On the other hand, the evidence shows that these articles were ordered by the Superintendent after May 8, 1956, with full knowledge on his part of the motion passed by the Board; that these purchases had not been authorized by the defendant Board of Education; that the items were bought and used without the knowledge, consent or approval of the Board. There is no evidence to show any ratification by the Board of Education or any of its members.

"The evidence is in sharp conflict as to whether or not the Chairman of the Board approved these purchases before the order was placed. In weighing the evidence the Court cannot help but recall that it was common knowledge in Blount County in 1956 that the re-

lations between the members of the Board of Education, on one side, and the County Superintendent, on the other, were very bitter. These differences had been well advertised in the primary election held that year, and in the newspaper, over the radio and by word of mouth. The Court is of the opinion that the witness Wood is mistaken about the year in which such approvals and assurances were given that it was all right to sell anything to the Superintendent and charge it to the Board. Viewing the evidence in the most favorable light for the plaintiff, the Chairman could not bind the Board by such approval, but the Court finds that these items were bought and used without the knowledge, consent or approval of any of the members of the Board.

"The Court has reached the conclusion that the defendant is not liable because of the benefits received by the schools from the use of the articles furnished by the plaintiff under these circumstances. If the agent had authority in this case to bind the defendant to pay a bill of $724.25, he had authority to bind the defendant to pay a bill of 724 thousand dollars and more. It is conceivable that two million dollars could be spent on the improvement of the school buildings and system. The Board of Education is charged with the responsibility under the law of determining how the school funds available can best be spent. To uphold the plaintiff's claim would shift this responsibility to the Superintendent of Education. Even if it be conceded that it seems logical that the purchase of these or similar supplies, from the plaintiff or another vendor, was necessary for the maintenance of the buildings in the School System, still the responsibility of determining that necessity rests on the County Board of Education. See Sections 62, 71, 73, 74 and 99 of Title 52 of the Code of Alabama of 1940, as amended.

"In view of the holdings of the Alabama Supreme Court in the cases of State ex rel. Martin Vs. City of Gadsden, [216 Ala. 243] 113 So. 6, and County Board of Education Vs. Slaughter, [230 Ala. 229] 160 So. 758, it is the judgment of this Court that the defendant, the Blount County Board of Education, is not estopped to deny the authority of the Superintendent to make these purchases from the plaintiff."

Act No. 206 of August 3, 1955 (1955 Acts, p. 512) amends a Local Act of September 24, 1923, p. 237, so as to make the Blount County Superintendent "the purchasing agent of the county board of education and the county school system."

The general scheme in Code 1940, T. 52, as amended, shows that the county board of education by and large is the governing body of the county system while the superintendent is its executive. In addition to the sections cited by the trial judge, we also note that the board has, under § 236 (as amended) et seq., the main duty of maintaining a local system of financial budget control.

As to the use of the paint, preserver and the other goods, we consider apt the statement of Anderson, J., in Coleman v. Town of Hartford, 157 Ala. 550, 47 So. 594, 595:

"* * * The proof shows, in the case at bar, that the service was rendered to the mayor and the marshal, and that the town, through its council, not only did not ratify the employment, but repudiated the claim when brought to their attention, except as to $10 for preparing ordinances, and which seems to have been paid, or at least is not claimed in this suit. The plaintiff not only failed to prove any authority on the part of the mayor and marshal to employ him; but the defendant introduced an ordinance, showing that the council alone had the authority to select an attorney."

Certainly one can only ratify on the basis of full knowledge of the material facts. Lusco v. Jackson, 27 Ala.App. 531, 175 So. 566; Williston, Contracts (3rd Ed.), § 278. Moreover, implied contract—sometimes classified under restitution—presupposes that the other party has an opportunity to accept or reject the benefit. Here, under the evidence, the board was only presented with an accomplished fact. Beckley-Cardy Co., Inc. v. West Point, etc., District No. 3, 209 Ark. 792, 192 S.W.2d 540.

In Restatement, Second, Agency, § 99, Retention of Benefits as Affirmance, the text reads:

"The retention by a purported principal, with knowledge of the facts and before he has changed his position, of something which he is not entitled to retain unless an act purported to be done on his account is affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such retention he repudiates the act. Even if he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction."

Followed by Comment c. Change of principal's situation, in part

"The principal is under no duty to return things received as the result of an unauthorized act * * * if he incorporates them in something from which they cannot be separated, * * *".

To which Illustration 5 is appended:

"5. Purporting to act for P but without power to bind him thereby, A buys window frames from T and delivers them to P's workmen as coming from P. The window frames are installed and the house completed before P learns the facts. He retains the frames. There is no affirmance."

Inapplicable here are the quantum meruit or quantum valebat cases such as Greeson Mfg. Co. v. County Board of Education, 217 Ala. 565, 117 So. 163, and Allen v. Intendent, etc., of LaFayette, 89 Ala. 641, 8 So. 30, 9 L.R.A. 497. Thus, in the Greeson case the supplier appeared before the assembled school board and was given an oral consensus of that body's resolve to pledge its credit for lumber furnished to a builder. See Greeson Mfg. Co. v. County Board of Education, 221 Ala. 483, 129 So. 42; City of Selma v. Mullen, 46 Ala. 411.

In Allen borrowing was held ultra vires the town, but the council's taking a loan embraced receipt of money. The corporate authorities using these funds for the town's benefit for an end authorized by its charter repelled a taxpayer's bill for an injunction against repayment.

We agree with the judgment below whether the Panther Company's theory of recovery be on (1) Phillips's being empowered to act without approval of the board or (2) the supposed benefit to the school buildings either as (a) ratification or (b) quantum valebat.

Affirmed.