MOORE, Judge.
James Andrew Ridnour appeals from a judgment entered by the Limestone Circuit Court (“the trial court”) on a jury’s verdict in favor of Brownlow Homebuild-ers, Inc. (“BHI”), awarding BHI $55,461.96 on its claim of breach of contract and from judgments as a matter of law entered by the trial court on claims asserted by Ridnour against BHI and John David Brownlow. We affirm.

Procedural History

The pertinent procedural history is as follows. In September 2007, BHI sued Ridnour alleging that Ridnour had failed to pay the last installment due under the terms of a residential construction contract and seeking a declaration of the validity and enforcement of a materialman’s lien against the property. Ridnour answered the complaint and asserted counterclaims against BHI alleging, among other things, breach of contract and slander of title. With the approval of the trial court, Ridn-our joined John David Brownlow as a defendant, in his individual capacity, asserting the same claims against Brownlow as had been made against BHI. In May 2009, the trial court granted Ridnour’s motion for leave to amend his counterclaim in order to allege latent defects in the construction of the residence and for a continuance. After the recusal of the first trial judge and several continuances, the case went to trial in April 2011.
The day before jury selection was to begin, the trial court heard arguments ón a motion in limine filed by BHI and Brownlow in August 2010, requesting that the trial court exclude from the trial any arguments or evidence based on the 1997 Standard Building Code. The trial court granted that motion, stating in a written order that
“there existed no building code in the unincorporated areas of Limestone County for the relevant time frame of the case at hand. The State Fire Marshal’s purported adoption of a residential building code has no application to this case.”
*556 During the subsequent trial, near the end of the presentation of his case, Ridnour, as an offer of proof made outside the presence of the jury, called Alabama State Fire Marshal Ed Paulk, who testified regarding his office’s adoption of the 1997 Standard Building Code. Ridnour further moved the trial court to take judicial notice of certain state laws and regulations that, Ridnour argued, authorized the State Fire Marshal to adopt the 1997 Standard Building Code. Ridnour further offered expert testimony and exhibits summarizing the alleged violations of the 1997 Standard Building Code committed in the construction of the residence. After receiving the offer of proof, the trial court maintained its ruling on the motion in limine and denied the judicial-notice motion.
At the close of the evidence, Ridnour voluntarily dismissed his breach-of-contract claim against BHI. The trial court disposed of all of Ridnour’s remaining claims against Brownlow and BHI by granting their respective motions for a judgment as a matter of law (“JML”) pursuant to Rule 50, Ala. R. Civ. P. The trial court denied Ridnour’s motion for a JML on the breach-of-contract claim filed by BHI, submitting that claim to the jury.[1] After deliberating, the jury returned a verdict in favor of BHI in the amount of $55,461.96, and the trial court entered a judgment on that verdict without objection on April 26, 2011. Ridnour did not file any postjudgment motions, and he timely appealed the trial court’s judgment.[2]

Issues

On appeal, Ridnour raises eight different issues. We do not reach the sixth issue, in which Ridnour argues that BHI did not present sufficient evidence that it was a party to the residential construction contract, because Ridnour did not properly preserve that issue for appeal. See United Servs. Auto. Ass’n v. Hobbs, 858 So.2d 966, 971-72 (Ala.Civ.App.2008) (recognizing that, when a party wishes to challenge the sufficiency of the evidence, that party must follow the “precise plan” of Rule 50, Ala. R. Civ. P., which requires that the party move for a JML at the close of all the evidence and make a postverdict or renewed motion for a JML). This court will not consider Ridnour’s seventh issue — that the trial court erred in granting the motion for a JML filed by BHI on his slander-of-title claim — because Ridnour does not cite any legal authority in support of that argument. See Rule 28(a)(10), Ala. R.App. P.; and Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (“This court will address only those issues properly presented and for which supporting authority has been cited.”). We also do not reach Ridnour’s eighth issue, in which Ridnour argues that the trial court erred in entering a JML on Ridnour’s claim that the residence was not *557 constructed in compliance with the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., again due to Ridnour’s failure to cite any legal authority. Id.
Ridnour’s first five issues all relate to the correctness of the trial court’s ruling excluding any evidence of the applicability of or violations of the 1997 Standard Building Code. We will address those issues because they have been properly preserved, see State v. Askew, 455 So.2d 36 (Ala.Civ.App.1984) (noting that the party seeking review of a denial of a motion in limine generally must make an offer of proof at trial to preserve the issue for appellate review), and argued.

Analysis

On appeal, Ridnour argues that the trial court erred in excluding evidence regarding the 1997 Standard Budding Code because that code had been lawfully promulgated through the office of the state fire marshal and the commissioner of insurance and that code established the mandatory residential construction standards that were applicable statewide at the time of the contract and construction of the residence at issue. We disagree.
Pursuant to § 27-2-10(a), Ala.Code 1975, the state commissioner of insurance “shall prescribe the ... duties of ... a State Fire Marshal.” The commissioner of insurance has not adopted any rules or regulations setting out the duties of the state fire marshal, but those duties are described in Chapter 19 of Title 36 of the Alabama Code of 1975 and, under § 27-2-17(a), Ala.Code 1975, no rule or regulation of the commissioner of insurance “shall extend, modify, or conflict with any law of this state or the reasonable implications thereof.” Thus, the commissioner of insurance would have authority only to prescribe duties of the state fire marshal that are in line with those duties established by the more specific laws regulating the duties of that officer, and the commissioner of insurance cannot confer additional powers on the state fire marshal that have been withheld by the legislature.
The only statute empowering the state fire marshal to adopt regulations of any kind is § 36-19-9, Ala.Code 1975. That section provides:
“The Fire Marshal, subject to the approval of the Commissioner of Insurance, shall make regulations for fire prevention and protection of any construction or building, exits or other safety measures and the keeping, storing, use, manufacture, sale, handling, transportation or other disposition of rubbish and highly inflammable materials, gunpowder, dynamite, carbide, crude petroleum or any of its products, explosives or inflammable fluids or compounds, tablets, torpedoes or any explosive of like nature including all fireworks, and may prescribe the material and construction of receptacles and buildings to be used for any of said purposes.”
(Emphasis added.) It is well settled that “[w]ords used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” Tuscaloosa Cnty. Comm’n v. Deputy Sheriffs' Ass’n of Tuscaloosa Cnty., 589 So.2d 687, 689 (Ala.1991). The word “any” is a broad term, Pappenburg v. State, 10 Ala.App. 224, 229, 65 So. 418, 420 (1914), synonymous with “all,” see Neal v. Watkins, 12 Ala.App. 593, 594-95, 68 So. 552, 553 (1915) (construing statutory phrase “all questions of fact” to mean “any question of fact that might be submitted to a jury”), so that the phrase “any construction or building” would encompass every type of construction or building, including residential construction and residential *558 buildings. Thus, there can be no question that the state fire marshal can make regulations applicable to residential construction and buildings within the state.
Section 36-19-9, however, plainly states that those regulations shall be for the limited purpose of “fire prevention and protection.” The office of the state fire marshal was created by our legislature, see Ala. Acts 1919, No. 701, p. 1013, § 2, and, like any other creature of statute, the state fire marshal “can exercise only those powers which are expressly conferred upon [him or her], or necessarily incident thereto.” County Bd. of Educ. v. Slaughter, 230 Ala. 229, 232, 160 So. 758, 760 (1935). Hence, we conclude that the state fire marshal is empowered by § 36-19-9 to make regulations affecting residential construction and residential buddings only insofar as those regulations relate to fire prevention and protection.
In reaching our conclusion, we note that the legislature specifically empowered the state fire marshal to enter into “any building or premises” in the state, but only for “the purpose of making an investigation or inspection which under the provisions of this article he [or she] may deem necessary to be made.” § 36-19-4, Ala.Code 1975 (emphasis added); see also § 36-19-11, Ala.Code 1975 (authorizing state fire marshal to inspect any building to determine if it is “especially liable to fire and is situated so as to endanger life or property”). Section 36-19-1, Ala.Code 1975, provides that the state fire marshal may act as a statewide peace officer. Section 36-19-2, Ala.Code 1975, provides that the state fire marshal can enforce state laws, regulations, and ordinances relating to:
“(1) Prevention of fires;
“(2) Storage, sale and use of combustibles and explosives;
“(3) Installation and maintenance of automatic and other fire alarm systems and fire extinguishing equipment;
“(4) Construction, maintenance and regulation of fire escapes;
“(5) The means and adequacy of exits in case of fire from factories, asylums, hospitals, churches, schools, halls, theaters, amphitheaters and all other places in which numbers of persons live, work or congregate from time to time for any purpose or purposes;
“(6) Suppression of arson, and the investigation of the cause, origin and circumstance of fires.”
No section of article 19 expressly or impliedly gives the state fire marshal the authority to inspect or investigate a residential building for design or construction flaws other than for the purpose of fire prevention or protection.[3]
“It is the duty of the court to construe every word in each section of a statute consistent with the other sections in pari materia.” Winner v. Marion Cnty. Comm’n, 415 So.2d 1061, 1063 (Ala.1982). Our construction of § 36-19-9 corresponds exactly with the powers and duties of the state fire marshal as described in the other sections of article 19. Those sections reinforce our conclusion that the power of the state fire marshal to promulgate or adopt regulations regarding residential construction and buildings is limited to the subject *559 matter of fire prevention and protection and that the state fire marshal lacks any authority to regulate residential construction and residential buildings for any other purpose.
The legislature no doubt knows how to employ language to authorize a governmental agency to adopt a general residential building code. For example, § 11-45-8(c), Ala.Code 1975, specifically provides that municipalities may pass ordinances that
“adopt by reference thereto, without setting the same out at length in the ordinance, rules, and regulations which have been printed as a code in book or pamphlet form for:
“(1) The construction, erection, alteration, or improvement of buildings.”
Section 41-9-166, Ala.Code 1976, provides that any municipality and any county commission may similarly adopt by reference building codes “published by the Southern Building Code Congress International” to apply to “private buildings and structures” ■within their jurisdiction. The legislature has not used similar language in describing the powers of the state fire marshal. See Ex parte Jackson, 614 So.2d 405, 407 (Ala.1993) (stating that the legislature knows how to draft a statute to reach a particular end and that “[t]he judiciary will not add that which the Legislature chose to omit”).
In 1992, the legislature enacted its most recent and most specific law relating to the adoption of residential building codes. Act No. 92-608, Ala. Acts 1992, codified as amended at Ala.Code 1975, § 34-14A-1 et seq., created the Home Builders Licensure Board (“the Board”). The legislative intent of Act No. 92-608 is stated in § 34-14A-1:
“In the interest of the public health, safety, welfare, and consumer protection and to regulate the home budding and private dwelling construction industry, the purpose of this chapter, and the intent of the Legislature in passing it, is to provide for the licensure of those persons who engage in home building and private dwelling construction, including remodeling, and to provide home building standards in the State of Alabama.... The Legislature finds it necessary to regulate the residential home building and remodeling construction industries.”
(Emphasis added.) In § 34-14A-12, Ala. Code 1975, the Legislature has provided, in pertinent part:
' “(a) The board is authorized to establish or adopt, or both, standards of practice for residential home builders within the state.
“(b) The county commissions of the several counties are authorized and empowered to adopt building laws and codes by ordinance which shall apply in the unincorporated areas of the county. The building laws and codes of the county commission shall not apply within any municipal police jurisdiction, in which that municipality is exercising its building laws or codes, without the express consent of the governing body of that municipality. The building laws and codes of the county commission may apply within the corporate limits of any municipality with the express consent of the governing body of the municipality. The county commission may employ building inspectors to see that its laws or codes are not violated and that the plans and specifications for buildings are not in conflict with the ordinances of the county and may exact fees to be paid by the owners of the property inspected.
[[Image here]]
“(d) The county commissions, municipalities, and other public entities are *560 hereby authorized to enter into mutual agreements, compacts, and contracts for the administration and enforcement of their respective building laws and codes.”
(Emphasis added.)
By virtue of the foregoing statutes, the legislature has expressly granted county commissions the authority to adopt general residential building codes and laws, which, in turn, can be adopted by municipalities, see Murry v. City of Abbeville, 997 So.2d 299 (Ala.2008), and empowered the Board to develop standards of practice for home builders to assure compliance with those codes. It would be inconsistent with this express statutory scheme, which follows the historical pattern of giving county commissions and municipalities the power to adopt general residential building codes suitable to their particular jurisdictions, to conclude that the state fire marshal also holds the power to adopt general building codes that would be applicable statewide.
Harmonizing the various statutory and regulatory provisions together, as we are required to do, see Ex parte Jones Mfg. Co., 589 So.2d 208, 211 (Ala.1991) (“Statutes should be construed together so as to harmonize the provisions as far as practical.”), we hold that only county commissions and municipalities have the power to adopt general residential construction and building codes but that the state fire marshal may adopt residential construction and building codes relating to fire prevention and protection applicable statewide that supersede the municipal and county codes to the extent they are inconsistent with the code adopted by the state fire marshal. See Alabama Dep’t of Reve-nue v. Jim Beam Brands Co., 11 So.3d 858, 862-63 (Ala.Civ.App.2008) (“[A] specific statute relating to a specific subject is regarded as an exception to and must prevail over a general statute relating to a broad subject.”).
At the time of the contract and construction of the residence at issue in this case, Ala. Admin. Code, Rule 482-2-101-.02(1), promulgated by the Department of Insurance, provided that “[t]he Standard Building Code, 1997 Edition, is adopted by reference as a regulation of the State Fire Marshal, with certain exceptions as listed in this rule.” Ridnour argues that that regulation should be given the force of law. See Standard Oil Co. v. City of Gadsden, 263 F.Supp. 502, 508 (N.D.Ala.1967) (“Being adopted pursuant to legislative authority, the official regulations of the State Fire Marshal are to be given the effect of law.”). However, to the extent that portions of the 1997 Standard Building Code did not relate to fire prevention and protection,[4] under § 36-19-9, the state fire marshal lacked the authority to adopt them and, pursuant to § 27-2-17, the commissioner of insurance could not adopt them, so they would be considered “ ‘ “a mere nullity.” ’ ” See Alabama Dep’t of Revenue v. Jim Beam Brands Co., 11 So.3d at 864 (quoting Ex parte City of Florence, 417 So.2d 191, 193-94 (Ala.1982)).
As part of Ridnour’s offer of proof, Paulk testified that the 1997 Standard Building Code included standards regarding: the number of brick ties and anchor bolts to be used; the proper construction of brick-veneer walls; the use of wee- *561 pholes;[5] the use of concrete reinforcement in the construction of foundation walls; the construction of block piers; and the construction of homes accessible to handicapped individuals. Ridnour’s expert witnesses were prepared to opine that BHI had violated those standards in constructing the residence at issue. However, Paulk did not indicate that those standards related to fire prevention and protection, and, on appeal, Ridnour does not argue that they do. This court is convinced that those standards are not intended for fire prevention and protection and that they were not within the authority of the state fire marshal or the commissioner of insurance to adopt.
In its order granting the motion in li-mine, the trial court found that “[t]he State Fire Marshal’s purported adoption of a residential building code has no application to this case.” Because it is not necessary for our decision, we do not decide whether all the portions of the 1997 Standard Building Code adopted in the 2006 version of Rule 482-2-101-.02 are void because they are unrelated to fire prevention and protection, but we do hold, as a matter of law, that those portions upon which Ridnour and his witnesses relied were not effective and did not govern the construction of the residence at issue.[6] The trial court, therefore, correctly granted the motion in limine, properly excluding all evidence relating to those standards and their alleged violation, see Foster v. Kwik Chek Super Markets, Inc., 284 Ala. 348, 349-50, 224 So.2d 895, 896 (1969) (requirements in city code regarding slope of exit ramps that were not in effect at time of accident and that did not apply to particular structure at issue were not relevant and were properly excluded as inadmissible to prove negligence in slip-and-fall action), and it committed no reversible error by failing to take judicial notice of the statutes and administrative regulations under which the state fire marshal and commissioner of insurance purported to adopt them. See Rule 45, Ala. R.App. P. (“No judgment may be reversed ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”). The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. The record contains no judgment as to BHI’s claim for enforcement of its material-man's lien. In his answer, Ridnour properly demanded that that claim be submitted to the jury. See Cumens v. Garrett, 294 Ala. 535, 319 So.2d 665 (1975) (a party may demand jury on issue of enforcement of materialman's lien). BHI did not object to the jury instructions or the verdict, which did not include any mention of the materialman’s lien. Therefore, we conclude that BHI has waived that claim. See Foster v. Prince, 224 Ala. 523, 141 So. 248 (1932) (when jury verdict awarded contract damages only, court could not later amend judgment to declare and enforce lien). The judgment is therefore final and will support an appeal.

. Ridnour appealed to this court, but the appeal was transferred to our supreme court because the amount of the judgment exceeded $50,000 and, thus, was outside this court's appellate jurisdiction. See § 12-3-10, Ala. Code 1975. Our supreme court deflected the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.

. Section 36-19-2 provides that, in addition to the duties and powers set out in article 19, the state fire marshal “shall have such other powers ... as may be ... imposed upon [him or her] from time to time by the laws of this state.” Ridnour has not directed this court to, and we have not independently discovered, any law found elsewhere in the Alabama Code of 1975 that authorizes the state fire marshal to adopt or to enforce regulations for residential construction within this state, other than for fire-prevention and fire-protection purposes.

. In 2006, Ala. Admin. Code (Dep’t of Ins.), Rule 482-2-101-.03(l), provided: "The Standard Fire Prevention Code, 1994 Edition, is adopted by reference as a regulation of the State Fire Marshal, with certain exceptions as listed in this rule." Our decision should not be construed as holding that that regulation does or does not apply to residential construction and buildings or that it is or is not valid.

. According to the evidence in the record, "weepholes” are openings incorporated into the brick veneer and foundational materials to allow water and condensation to escape from the foundation area.

. We make no comment as to the applicable standard because that issue is not before the court.