United States Court of Appeals,

Eleventh Circuit.

No. 95-6827.

Lurlene G. MENCER, Plaintiff-Appellee,

v.

Cleveland HAMMONDS, Defendant-Appellant.

Feb. 5, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV 94-B-1486-S), Sam C. Pointer, Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and STAGG[*], Senior District Judge.

TJOFLAT, Circuit Judge:

In this case, a former teacher in the Birmingham, Alabama school system contends that the Board of Education and the Superintendent of Schools denied her equal protection of the laws, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, when they failed to appoint her principal of an elementary school because of her race and sex.[1] Seeking both legal and equitable relief, she has sued both the Board and the Superintendent, the latter in both his official and individual capacities.

This interlocutory appeal is from the district court's order rejecting the Superintendent's defense of qualified immunity and denying him summary judgment on the plaintiff's equal protection claim for money damages. The appeal thus presents only one question: whether the

[*]Honorable Tom Stagg, Senior U.S. District Judge for the Western District of Louisiana, sitting by designation.

[1]As we indicate *infra,* Mencer also claimed that the Board and the Superintendent violated other provisions of federal anti-discrimination law. These claims are not implicated in this appeal.

Superintendent, in his individual capacity, is entitled to qualified immunity from suit under section 1983. We answer that question in the affirmative and therefore reverse.

I.

A.

This action commenced on June 21, 1994, when Ms. Lurlene Mencer, a former public school teacher,[2] sued the Birmingham Board of Education. She alleged that the Board had violated her rights under 42 U.S.C. § 2000e *et seq.* (1994) ("Title VII"), 42 U.S.C. § 1981 (1994), and 29 U.S.C. § 621 *et seq.* (1994) (the "ADEA"), by failing to promote her to an available principalship in the Birmingham school system. Mencer claimed that the Board discriminated against her on the basis of her race (African-American), age (54), and sex. She subsequently amended her complaint to add a claim that such discrimination violated both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and sought legal and equitable relief under 42 U.S.C. § 1983 (1994).[3] At the same time, Mencer obtained leave to add the Superintendent, Dr. Cleveland Hammonds, as a party defendant in both his official and individual capacities with respect to each of the claims Mencer asserted against the Board.[4]

---

[2]Ms. Mencer was employed as a teacher at all times relevant to this litigation. She resigned from her position as assistant principal at Smith Elementary School by letter dated November 19, 1992, and is no longer employed by the Birmingham system.

[3]Mencer also added an allegation that the Board of Education and the Superintendent "continuously passed over the plaintiff for principalship positions since 1979."

[4]Under Alabama law, the Superintendent and the Board of Education act in concert when promoting a teacher. *See* Ala.Code § 16-12-16 (1995) ("The city superintendent of schools shall nominate in writing for appointment by the city board of education all principals, teachers, supervisors, attendance officers, janitors and all other employees of the board and shall assign to them their positions, transfer them as the needs of the schools require, [and] recommend them for promotion...."). Neither entity can promote a teacher without the approval of the other. *See* *Marsh v. Birmingham Bd. Of Educ.,* 349 So.2d 34, 35-36 (Ala.1977) (city superintendent cannot employ, promote, or dismiss teachers without Board approval); *Vodantis v. Birmingham Bd. of*

After the parties joined issue, the Board and Hammonds jointly moved for summary judgment on all of Mencer's claims. The Board's portion of the motion argued that all of Mencer's claims of discrimination failed for want of evidence of discrimination on the basis of race, sex, or age. Hammonds, in accordance with the twenty-third defense of his answer to Mencer's complaint, argued that the doctrine of qualified immunity protected him from liability for money damages with respect to Mencer's claim under the Equal Protection Clause.[5] The district court granted the motion in part, dismissing the ADEA and substantive due process claims, and denied it with respect to Mencer's remaining claims.[6] As for Hammonds' defense of qualified immunity, which it explicitly rejected, the court stated that "[p]laintiff has produced sufficient evidence of conduct violative of the equal protection clause on the part of Dr. Hammonds," and concluded that Hammonds' conduct had violated clearly established law. Hammonds now appeals the district court's denial of qualified immunity with respect to Mencer's equal protection claim.

B.

The salient facts are these. On June 10, 1992, a vacancy was posted in Birmingham schools for the positions of Principal at Gibson and Minor elementary schools. Mencer applied for both positions. A screening committee subsequently interviewed thirty applicants and recommended five

---

*Educ.,* 373 So.2d 320, 321 (Ala.1979) (neither board nor superintendent can dismiss without action of the other); *Board of Educ. of Escambia County v. Watts,* 19 Ala.App. 7, 9, 95 So. 498, 500 (1922) ("[T]he county board has no power to act until a principal has been recommended in writing by the superintendent of education. The power of selection is joint...").

[5]Hammonds' twenty-third defense asserted that he was entitled to qualified immunity with respect to all of Mencer's claims for relief. In moving for summary judgment on the qualified immunity ground, however, Hammonds sought judgment only on Mencer's constitutional equal protection claim brought under § 1983.

[6]The district court's dispositive order did not address Mencer's claim under 42 U.S.C. § 1981. Its failure to do so is of no moment in this appeal.

of those applicants to Hammonds for additional interviews. The five were Mencer, David Porter (a black male), Ken Walker (white male), Randle Key (black male), and Constance Moorer (black female). Hammonds selected Walker and Porter as the candidates most qualified for the positions at Gibson and Minor, respectively. Hammonds then went to the Board for approval for his selections.

In the interim, the principal at Baker elementary, Ronnie McFarling (white male), had requested a transfer to Gibson. When Hammonds reported to the Board, therefore, he recommended that McFarling be transferred to Gibson, that Walker be promoted to the resulting vacant principalship at Baker (rather than Gibson as originally intended), and that Porter be promoted to principal at Minor. The Board accepted Hammonds' recommendations, and the appointments were made.

There is no dispute that all of the successful applicants met the minimum qualifications for their positions as posted in the original vacancy notice; nor is it disputed that Mencer was qualified for the positions. Notwithstanding the qualifications of those who received the appointments, Mencer contends that Hammonds' and the Board's failure to promote her was discriminatory. Specifically, she claims that Hammonds intentionally discriminated against her because of her race and sex in violation of the Equal Protection Clause of the Fourteenth Amendment.

For evidence to support this claim, Mencer points to two statements. The first is a comment that Hammonds allegedly made in an interview with Mencer in 1990, immediately before appointing her to a temporary assistant principalship. Mencer claims that Hammonds stated "we need more male principals" and that he coupled this comment with one regarding the need for discipline in the school system. The second piece of relevant evidence is a letter that Hammonds sent to the EEOC in response to an EEO investigator's queries about the large number of African-American principals

in the Birmingham school system. Hammonds wrote: "When we reviewed our list of principals, you noted that we have few white principals. We are trying to maintain the present ratio of black and white. The former principals of Baker and Gibson were white."

The question before us is whether Hammonds is entitled to qualified immunity at this stage of the litigation. Because we find that none of Mencer's evidence creates a jury issue as to Hammonds' intent to discriminate against Mencer, and that therefore Hammonds did not violate clearly established law, the district court should have granted Hammonds immunity.

## II.

## A.

As a preliminary matter, Mencer challenges our jurisdiction to hear this case. She claims that the district court's denial of qualified immunity was based on an issue of "evidence sufficiency" and not on an issue of law. She argues that under the Supreme Court's decision in *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), we may not review a factual issue, and that we therefore have no jurisdiction over this appeal. *See id.* at 319-20, 115 S.Ct. at 2159 (holding that "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a "genuine' issue of fact for trial"). We disagree both with Mencer's interpretation of the district court's order and with her assessment of *Johnson.*

The district court's denial of Hammonds motion was not based on its findings concerning disputed facts, but on its conclusion that at the time Hammonds acted, it was "clearly established" that his conduct violated the Equal Protection Clause. Though the court apparently found that Mencer had presented a prima facie case of discrimination sufficient to survive summary judgment, it did not specifically address any of the elements of that case. Thus, the court did not deny

Hammonds qualified immunity based only on "evidence sufficiency" but on its belief that a reasonable person in Hammonds' position would have known his conduct violated clearly established law.

Even if the court had based its denial only on a bald assertion that sufficient evidence existed to allow a jury to find an equal protection violation, however, *Johnson* would not foreclose our review of this appeal. *See Behrens v. Pelletier,* 516 U.S. 299, ----, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996) (an argument under *Johnson* that appeal is not available because the district court's decision rested on the existence of a material issue of fact is a "misreading of the case"). The Supreme Court in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), stated that an appellate court has jurisdiction under 28 U.S.C. § 1291 (1994), to review a denial of summary judgment based on the issue of qualified immunity "to the extent that it turns on an issue of law." *Id.* at 530, 105 S.Ct. at 2817. A denial of qualified immunity at summary judgment necessarily involves two determinations: 1) that on the facts before the court, taken in the light most favorable to the plaintiff, a reasonable jury could find that the defendant engaged in certain conduct, and 2) that the conduct violated "clearly established law" such that a reasonable person in defendant's position would have had notice that his actions were unlawful. *See Johnson v. Clifton,* 74 F.3d 1087, 1091 (11th Cir.) *cert. denied,* --- U.S. ----, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996). *Johnson* establishes only that a plaintiff may not base an interlocutory appeal on the district court's first determination *by itself. See Behrens,* 516 U.S. at ----, 116 S.Ct. at 842 (explaining that *Johnson* only precludes appeal if "what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred ...").

A determination of whether the evidence supports a finding that a defendant engaged in certain conduct, however, is necessary to reach a determination of whether that conduct violated

clearly established law.  *Cf. Wooten v. Campbell,* 49 F.3d 696, 699 & n. 3 (11th Cir.1995) (concluding that, in an appeal of denial of qualified immunity at the dismissal stage, the court must first determine whether plaintiff has pled sufficient facts to allege a violation of a constitutional right before determining whether the right was clearly established).  Thus, if we are confronted with an appeal from a denial of qualified immunity, we may exercise our discretion to review the district court's preliminary determination as a means of reaching the issue of clearly established law.

In this case, it is unclear whether Hammonds' contentions on appeal are primarily directed at the district court's first or second determination.  For instance, he phrases the issue in this case as "[w]hether the trial court correctly decided that solely because race and sex discrimination were contrary to "clearly established law,' [Hammonds] would be denied qualified immunity...."  This could be either a challenge to the district court's determination that the law was clearly established, or an argument that the issue was not properly reached because the court erred in concluding that a jury could find Hammonds had engaged in certain conduct.  Hammonds goes on to argue both issues in his brief, but he continues to confuse the two prongs of the inquiry.  Because we favor the early resolution of qualified immunity issues, however, we believe that we must resolve any doubts over the scope of Hammonds' appeal in favor of jurisdiction over Hammonds' claims.  *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991);  *GJR Invs., Inc. v. County of Escambia, Florida,* 132 F.3d 1359, ---- (1998) ("Every successive stage to which a suit progresses reduces the effectiveness of the defense....").

B.

In moving for summary judgment, Hammonds claimed qualified immunity in defense to a section 1983 claim that is based on an equal protection violation.  A government actor, however, cannot violate a plaintiff's equal protection rights unless the defendant has the intent to discriminate.

*See, e.g., Parks v. City of Warner Robins, Georgia,* 43 F.3d 609, 616 (11th Cir.1995) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim."); *Washington v. Davis,* 426 U.S. 229, 239-45, 96 S.Ct. 2040, 2047-50, 48 L.Ed.2d 597 (1976) (same). Concomitantly, the actor *cannot* know he is violating clearly established equal protection rights unless he harbors discriminatory intent. *Cf. GJR Invs.,* 132 F.3d at ---- (holding that defendant was entitled to qualified immunity from an equal protection claim at the dismissal stage because plaintiff failed to plead differential treatment and purposeful discrimination). Thus, even though intent is not "conduct" per se, a district court must make a determination regarding intent as part of the first prong of its qualified immunity inquiry. As explained *supra,* we may evaluate this determination on appeal.[7]

In this case, Mencer, in order to defeat Hammonds' defense of qualified immunity, had to present the district court with enough evidence to allow a reasonable jury to find that Hammonds intended to discriminate against her. She did not do so.

The two statements to which Mencer points are not related in any way to her particular case and are ultimately ambiguous. The alleged comment concerning a need for more male principals cannot support a finding of intent to discriminate against Mencer, as Hammonds promoted Mencer to assistant principal immediately after making the comment. The letter concerning a "ratio" of white to black teachers was made in response to a suggestion that the Birmingham school system employed a disproportionate number of *black* officials. We see no way that it could serve as a basis

---

[7]Originally, in light of *Harlow v. Fitzgerald,* 457 U.S. 800, 815-18, 102 S.Ct. 2727, 2737-37, 73 L.Ed.2d 396 (1982) (stating that subjective intent is irrelevant on appeal from summary judgment based on qualified immunity), courts confronted with an appeal from a denial of qualified immunity were uncertain whether they could review a district court's conclusion that a material issue of fact existed concerning intent. We now recognize that when intent is a necessary element of the claimed violation, we may evaluate that determination. *See Edwards v. Wallace Community College,* 49 F.3d 1517, 1524 (11th Cir.1995).

for a finding that Hammonds intended to discriminate against Mencer, who is black.

There is nothing else in the record, taken in the light most favorable to the plaintiff, that would allow a reasonable jury to find that Hammonds intended to discriminate against Mencer on the basis of her sex or race.[8] Mencer's claim against Hammond in his individual capacity therefore cannot survive summary judgment because no reasonable person in Hammonds' position could have known that Hammonds' conduct violated Mencer's clearly established constitutional rights.

III.

For the above reasons, we reverse the judgment of the district court and instruct the district court to enter judgment for Hammonds in his individual capacity on Mencer's equal protection claim.

REVERSED.

---

[8]We must of course give deference to the district court's findings concerning Mencer's claim. The district court, however, made no specific finding on intent, stating only its legal conclusion that Mencer had "produced sufficient evidence of conduct violative of the equal protection clause." We therefore undertake our own perusal of the record. *See Johnson,* 515 U.S. at 319, 115 S.Ct. at 2159 (stating that if a district court does not state the facts it assumed for summary judgment, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court ... assumed").