Jessie Lorenzo SMITH, Plaintiff,

v.

STATE OF ALABAMA,
et al., Defendants.

Civil Action No. 97–T–551–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 27, 1998.

*Id.* at 2.

Ann K. Wiggins, Robert L. Wiggins, Jr., Amy W. Sinnott, Stanley W. Logan, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Plaintiff.

Allen R. Trippeer, Jr., Lisa Wright Borden, C. Dennis Hughes, London & Yancey, Birmingham, AL, for Defendants.

### ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiff Jessie Lorenzo Smith brought this lawsuit alleging that the defendants (the State of Alabama, the Alabama Department of Transportation, and the department's agents, Jimmy Butts, Ray Bass, Don Arkle, and Rex Bush) discriminated against him because of his race, in violation of the following: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; the equal protection clause of the fourteenth amendment to the United States Constitution, as enforced through 42 U.S.C.A. § 1983; and 42 U.S.C.A. § 1981. Jurisdiction is proper under 42 U.S.C.A. § 2000e–5 (Title VII) and 28 U.S.C.A. §§ 1331 (general federal question) and 1343 (civil rights).

The case is now before the court on the defendants' motion to dismiss. In their motion to dismiss, filed on June 24, 1997, and their brief in support of motion to dismiss, filed August 13, 1997, the defendants seek dismissal on the grounds that: (1) *res judicata* and collateral estoppel preclude Smith's claims; (2) it is improper to maintain an action separate from *Reynolds v. Alabama Dep't of Transp.*, civil action no. 85–T–665–N (M.D.Ala.) (Thompson, J.), which is still pending; (3) Smith's claims have already been considered and resolved by a special master; (4) Smith's claims have been resolved by the Transportation Department's grievance procedure; (5) Smith's §§ 1981 and 1983 claims against the State of Alabama, the Transportation Department, and the department's agents in their official capacities, are barred by the eleventh amendment to the United States Constitution; (6) individual claims under Title VII against the Transportation Department's agents are inappropriate; (7) punitive damages are not available against the State of Alabama, the Transportation Department, and the department's agents in their official capacities; (8) Smith lacks standing to assert claims that the defendants have discriminated against other employees of the Transportation Department; (9) to the extent that Smith alleges claims of disparate impact discrimination, such claims are not a viable cause of action under §§ 1981 and 1983; and (10) the Transportation Department's agents are entitled to qualified immunity against Smith's claims against them in their individual capacities. For the reasons that follow, the defendants' motion is granted in part and denied in part.

### I. MOTION–TO–DISMISS STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Fed.R.Civ.P. 12(b), *Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir.1990), and construes the complaint liberally in plaintiff's

favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The lawsuit may not be dismissed unless plaintiff can prove no set of facts supporting the relief requested. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686; *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993).

## II. BACKGROUND

Plaintiff Smith is an African–American male who has been employed by the Transportation Department since 1978 and, over the course of his tenure, has suffered discrimination because of his race as a result of the actions of the department's agents. Smith alleges that Transportation Department agents have denied him hiring, training, and promotional opportunities. All of Smith's claims of discrimination prior to March 16, 1994, are addressed in the consent decree entered on that date in *Reynolds v. Alabama Dep't of Transp.,* civil action no. 85–T–665–N, 1994 WL 899259 (M.D.Ala. March 16, 1994). Smith alleges, however, that departmental agents have continued to discriminate against him since March 16, 1994, by depriving him of promotions, job assignments, training, and compensation, as well as subjecting him to retaliatory evaluations, supervision, and harassment for participating in protected activity such as filing equal employment opportunity charges and internal grievances at the Transportation Department. He alleges that the defendants also actively recruited and aided white applicants and employees of the Transportation Department but did not assist him, and the defendants have used secretive practices in filling positions, including out-of-classification assignments. Smith further contends that these discriminatory practices represent the official policies of the defendants and that the implementation of such policies and practices by the defendants has deprived him of the same rights as those enjoyed by other employees.

## III. DISCUSSION

Each of the grounds on which the defendants are seeking dismissal is discussed separately below.

### A. *Res Judicata* and Collateral Estoppel

■ In their motion to dismiss, the defendants contend that the doctrines of *res judicata* and collateral estoppel preclude Smith from bringing all of the claims he raises in this lawsuit. They argue that all of the claims arise from the same nucleus of operative fact as those that have already been addressed in the 1994 *Reynolds* consent decree and the backpay award entered on April 16, 1997, pursuant to the *Reynolds* consent decree, *see Reynolds,* civil action no. 85–T–665–N (M.D.Ala.) (Doc. no. 1785). After a review of the complaint, the court does not agree that Smith's claims arise from the same nucleus of operative fact.

■ It is clear that the doctrine of *res judicata* does apply to cases in which a consent decree was entered. *Richardson v. Alabama State Bd. of Educ.,* 935 F.2d 1240, 1244 (11th Cir.1991). But the doctrine only applies when four prerequisites are met: (1) there is a final judgment on the merits of the first action; (2) the first decision is rendered by a court of competent jurisdiction; (3) the parties to both actions, or those in privity with them, are identical; and (4) the causes of action in both suits are identical. *Id.* As to the fourth prerequisite, whether the causes of action in both suits are identical, the inquiry is not only whether both cases advance precisely the same legal theory, but also whether the legal theories and claims arise out of "the same nucleus of operative fact." *NAACP v. Hunt,* 891 F.2d 1555, 1561 (11th Cir.1990). In this case, the causes of action are not identical because they do no arise out of the same nucleus of operative fact. In the instant lawsuit, Smith is seeking redress for the discrimination he has suffered since the entry of the consent decree in *Reynolds,* not the discrimination he has faced from the beginning of his tenure with the Transportation Department to the entry of the consent decree. Consequently, because the two suits involve different time periods, the two suits could not arise from the same nucleus of operative fact.

■ In addition, the doctrine of collateral estoppel does not apply here. For collateral estoppel to apply, three prerequisites must be met: (1) the issue at stake must be identi-

cal to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action. *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of N. Am., Inc.*, 32 F.3d 528, 532 (11th Cir. 1994). For the reasons discussed above, the issues at stake in this case are not identical to those in the *Reynolds* litigation because they deal with discrimination that allegedly took place after the entry of the consent decree. Indeed, for the same reasons, the present issues could not even have been litigated in *Reynolds.*

The defendants emphasize that the parties in this case are practically identical to those in *Reynolds,* and that the discrimination alleged in this case is practically identical to that in *Reynolds.* This, however, is simply the result of allegations that the same parties committed similar discrimination in two different time periods. And even though the time periods may run end-to-end, that does not make them the same, and certainly does not prohibit redress in the latter time period.

It is conceivable that the consent decree entered in *Reynolds* could have precluded Smith's suit if there had been a term to that effect that was part of the agreement. *Richardson,* 935 F.2d at 1245 ("The proper analysis [for determining if a consent decree precludes a future claim] is whether the parties specifically agreed to preclude a given issue in the consent decree. 'The central inquiry in determining the preclusive effect of a con-

sent decree is the intention of the parties as manifested in the decree or otherwise.' "). However, there is no such term, and no indication in the decree that such preclusion was intended. The consent decree clearly resolves all of the Transportation Department's liability for any and all discrimination from May 21, 1979, to March 16, 1994, the date of the entry of the decree. But it in no way limits suits for redress of future discrimination. Because there is no such limiting term in the consent decree, the consent decree does not bar claims for future acts of discrimination. As for the backpay award, it was simply the result a proceeding pursuant to the consent decree that was required to resolve the scope of the relief provided under the consent decree. It was not the result of a new adjudication by the court, so it does not bar claims for future acts of discrimination. The defendants' motion to dismiss on this ground is therefore denied.

### B. Improper to Maintain an Action Separate from *Reynolds*

 In their motion to dismiss, the defendants argue that it is improper to maintain a lawsuit separate from *Reynolds* because any challenges to the orders, the injunctions, or the consent decree in *Reynolds* must be handled by the *Reynolds* court, and that to allow separate lawsuits to go on simultaneously would result in an extreme waste of resources for the court and all the parties involved by creating duplicative litigation and inconsistent adjudications.[1] Upon a careful review of the

---

**1.** The court understands the defendants to argue only that Smith cannot maintain a separate lawsuit if his purpose is to challenge the orders, the injunctions, or the consent decree in *Reynolds.* The defendants, as the court understands, are not arguing that Smith cannot maintain a separate lawsuit to seek redress for any discrimination or retaliation he has faced subsequent to the 1994 *Reynolds* consent decree; or, to put it another way, the defendants are not arguing that Smith must seek redress for post-consent decree wrongs in *Reynolds* alone. Indeed, such an argument by the defendants would be anomalous and contradictory in light of the following:

 (1) The court in *Reynolds* has ordered, on four different occasions, that individuals pursue separate lawsuits when they have either tried to consolidate a case with *Reynolds, see Reynolds,* civil action no. 85–T–665–N (M.D.Ala.),

order entered July 10, 1995 (Doc. no. 670), or tried to intervene in *Reynolds* with claims of discrimination subsequent to their testimony in the 1992 *Reynolds* trial or to the entry of the 1994 *Reynolds* consent decree, *see Reynolds,* orders entered July 6, 1995 (Doc. no. 669), August 24, 1995 (Doc. no. 720), and July 12, 1996 (Doc. no. 1140).

 (2) The defendants have argued, in opposing the foregoing consolidation and interventions, that separate lawsuits for subsequent discrimination are proper, and even to be encouraged. *See Reynolds,* defendants' opposition to consolidation, filed March 15, 1995 (Doc. no. 595), at 5 ("To the extent the plaintiff may assert the complaint is based primarily or exclusively on alleged post-consent decree conduct, there would in that event be no reason for consolidation because the two cases would present no

complaint, the court sees no indication that this lawsuit involves any type of a challenge to any orders or injunctions, or the consent decree entered in *Reynolds*.

In the section of the complaint that outlines the legal bases on which this lawsuit rests, Smith indicates that it is brought pursuant to Title VII and §§ 1981 and 1983. Furthermore, in Smith's prayer for relief, he asks for·relief that is appropriate under Title VII and §§ 1981 and 1983, but does not ask for any change, modification,·or alteration of any part of *Reynolds*. Although it is true that Smith discusses *Reynolds*, and its orders, injunctions, and consent decree, they are discussed in the complaint's fact section as part and parcel of the history of the Transportation Department's employment practices, and not as a legal basis for the lawsuit or as forming any part of the relief in this case. In light of this, the defendants' motion to dismiss on this ground is denied.

## C. Special Master and Grievances

■ The defendants claim in their motion to dismiss that Smith is precluded from bringing ·all of the claims in this lawsuit because he has already raised identical issues through the grievance procedure designed pursuant to article XIX, ¶ 7 of the 1994 consent decree in *Reynolds*. They contend that he has had hearings before a special master on some of these grievances, agreed to resolutions of others, and still has the grievance process pending for others. Consequently, according to the defendants, allowing this suit to go forward is giving Smith a second, and perhaps even third, "bite at the apple"— that is, the opportunity to have these· claims heard again and again. With one exception, the court disagrees that Smith's having raised these issues before through the Transportation Department's grievance procedure somehow precludes him from bringing a separate lawsuit to redress the discrimination he alleges.

■ First, there is no indication from the grievance procedure that it is intended to serve as a substitute for an individual claimant bringing a lawsuit to redress discrimination he has faced. For instance, the claimant need not agree to any specific terms whereby he waives any rights he may have to a sepa-

issues of fact or law in common."); defendants' opposition to Chapple motion to intervene, filed May 9, 1995 (Doc. no. 604), at 9 ("Stated another way, either the intervenor's claims are barred by *res judicata*, or they are not common to the underlying lawsuit.") and 11 ("Accordingly,· the motion to intervene is due to be denied and putative intervenor Chapple should be allowed to file a separate lawsuit with the Clerk....."); opposition of defendant Alabama Department of Transportation to motion of Julius Morgan to intervene, filed May 29, 1996 (Doc. no. 1044), at 4 ("Defendants have not at any time agreed that Morgan's separate complaint could properly be added to this action by way of intervention. Indeed, defendants' counsel took the .position in the conversation with [the Special Master] that Morgan's Title VII complaint would be barred by the doctrine of *res judicata* if his grievance were to proceed and be ruled upon by the Court, and contended that Morgan should withdraw his grievance if he intended to file suit with respect to the same claims,").

(3) As also stated· later in this opinion, *see* § III.C and note 3, *infra*, pursuant to the 1994 *Reynolds* consent decree and the suggestion of the *Reynolds* court, the Transportation Department developed a grievance procedure, which was adopted by the court, to address allegations of discrimination that occurred after the entry of the consent decree. This procedure excluded the *Reynolds* court from the process, and expressly provided that nothing about the procedure would preclude a dissatisfied grievant from bringing a new and separate lawsuit. The final grievance procedure adopted by the court was changed to accommodate the *Reynolds* court's concerns that a grievance procedure that was closely linked to the on-going litigation in *Reynolds* would bring into *Reynolds* post-decree matters that were beyond the scope of the litigation, and not rightfully part of the proceedings.

Moreover, for the defendants to contend in a separate lawsuit that a complainant's only avenue for relief for post-consent-decree wrongs is in *Reynolds*, after having taken a contrary position in *Reynolds* itself, may well be precluded under the doctrine of "judicial estoppel." "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996)). *See also Sumner v. Michelin North America, Inc.*, 966 F.Supp. 1567, 1571 (M.D.Ala.1997). "The doctrine is intended to prevent a litigant from 'playing fast and loose with the courts.'" *Id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)). The court does not resolve this question, but simply identifies it as potentially relevant under these circumstances.

rate suit in order to use the grievance process. Second, determinations on employment discrimination claims made pursuant to administrative proceedings or contractual grievance processes are not given any preclusive effect, under doctrines like *res judicata*, in future suits to redress rights under Title VII or § 1981. *Stafford v. Muscogee County Bd. of Educ.*, 688 F.2d 1383, 1392 (11th Cir. 1982) (rejecting any preclusive effect of a determination made by executive branch civil rights office on future Title VII and § 1981 lawsuit); *Hutchings v. United States Indus., Inc.*, 428 F.2d 303, 313–14 (5th Cir.1970) (rejecting any preclusive effect of arbitrators holding under contractual grievance process on future Title VII lawsuit because grievance involved assertion of contractual rights, whereas lawsuit involved assertion of Title VII rights).[2] The remedies in an administrative action or under a grievance procedure are different than those available under Title VII or § 1981, *Stafford*, 688 F.2d at 1392, and, in any event, the federal courts are intended to be the final arbiter of rights under Title VII, not administrative agencies or private tribunals. *Hutchings*, 428 F.2d at 313–14. Finally, the parties and the court in *Reynolds*, at the suggestion of the *Reynolds* court, amended the grievance procedure to remove the *Reynolds* court from the process so as to allow grievants dissatisfied with the process to bring new and separate lawsuits which would not be precluded by the grievance procedure nor the *Reynolds* litigation.[3]

As stated, there is one exception to the court's holding here. Before the current grievance procedure was adopted by the court in *Reynolds*, it was possible for some grievants to have their claims heard by a special master and then reviewed by the *Reynolds* court. If a grievant followed this old procedure, and had his grievance heard by a special master, and a final judgment was entered on it by the court, such a judgment could have a preclusive effect under the doctrines of *res judicata* and collateral estoppel. Although some of Smith's claims have been heard by a special master, the court has not entered a final judgment on them.[4] Consequently, as of yet, there is no concern about any preclusion here because pursuing the grievance procedure to anything short of a judgment by the court does not have a preclusive effect.

In light of the foregoing, the court concludes that Smith's claims are not precluded by his invocation of the consent decree's grievance process, and, therefore, the defendants' motion to dismiss on this ground is denied. As a final note, the court's conclusion does not mean that the court will not consider Smith's grievances in resolving the issues in this lawsuit. Smith has filed numerous grievances related to discrimination he has allegedly suffered since the entry of the consent decree in *Reynolds*, and the awards and findings of any grievance procedures related to this alleged discrimination may be admissible evidence for the court to consider in resolving his Title VII and §§ 1981 and 1983 claims. *Hutchings*, 428 F.2d 303, 314 n. 10.

### D. Claims for Damages and Other Relief under §§ 1981 and 1983

In the defendants' motion to dismiss, they claim that Smith's claims for damages under

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**3.** *See Reynolds*, civil action no. 85–T–665–N (M.D.Ala.), revised complaint procedure, filed August 9, 1995 (Doc. no. 706), at 2–10 (setting forth procedure involving filing, investigation, mediation, hearing, and arbitration, all within the Transportation Department), and 10 ("Nothing in this procedure, however, shall be construed to prevent filing of any administrative charge or separate legal action."), and order and injunction, entered August 9, 1995 (Doc. no. 707) (adopting revised complaint procedure).

The parties, however, recognized that there may be special circumstances that warrant raising in *Reynolds* a matter that was initiated as a grievance. The grievance procedure provides that "In the event that class counsel deems the outcome of the arbitration to constitute a violation of Consent Decree I, class counsel may file a motion … for relief [with] the Court." *Reynolds*, civil action no. 85–T–665–N (M.D.Ala.), revised complaint procedure, filed August 9, 1995 (Doc. no. 706), at 10. These circumstances are not present here.

**4.** *See* defendants brief in support of motion to dismiss, filed August 13, 1997, at 9–10.

§§ 1981 and 1983 against the State of Alabama, the Transportation Department, and the department's agents in their official capacities, are barred by the eleventh amendment. Smith recognizes that the eleventh amendment bars all §§ 1981 and 1983 claims against the State of Alabama and the Transportation Department, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) ("[A] suit in which the State or one if its agencies or departments is named as defendant is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought."), and bars damage claims against the department's agents in their official capacities.[5] *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) ("[T]he Eleventh Amendment bars a damages action against a State in federal court. . . . This bar remains in effect when State officials are sued for damages in their official capacity."). The defendants' motion to dismiss will be granted to this extent.

### E. Individual Liability under Title VII

In their motion to dismiss, the defendants argue that individual claims under Title VII against the Transportation Department's agents are inappropriate. Smith recognizes that there is no individual liability under Title VII for the Transportation Department's agents, and asserts that the claim is brought against the State of Alabama and the Transportation Department for compensatory damages and whatever other relief may be appropriate.[6] *See Smith v. Capitol City Club of Montgomery*, 850 F.Supp. 976, 978–81 (M.D.Ala.1994). The defendants' motion to dismiss will be granted to this extent.

### F. Punitive Damages Against the State of Alabama, the Transportation Department, and the Transportation Department's Agents under Title VII

The defendants argue in their motion to dismiss that, under Title VII, punitive damages are not available against the State of Alabama, the Transportation Department, and the Transportation Department's agents in their official capacities. Smith concedes that Title VII provides: "A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision* ) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a(b)(1) (emphasis added). The defendants' motion to dismiss will be granted to this extent.

### G. Standing for Others

In their motion to dismiss, the defendants argue that Smith is attempting to maintain standing based on the discrimination committed against other employees of the Transportation Department, and to redress violations of the rights of other employees. In response, Smith asserts that he never intended to make claims for other individuals, and that any discussion of other individuals is intended to show a pattern or practice of discrimination by the Transportation Department.[7] In view of Smith's clarification of the nature of his claims, the court considers the parties bound by this interpretation of the complaint, and therefore considers the issue of Smith's maintaining standing based on the discrimination committed against other employees of the Transportation Department, and to redress violations of the rights of other employees, raised in the motion to dismiss, to be moot.

### H. Disparate Impact

In their motion to dismiss, the defendants argue that, to the extent that Smith alleges claims of disparate impact discrimination, such claims are not a viable cause of action under §§ 1981 and 1983. In his supplemen-

---

**5.** Plaintiff's brief in opposition to the defendants' motion to dismiss, filed August 14, 1997, at 6.

**6.** *Id.* at 5–6.

**7.** Plaintiff's supplemental brief in opposition to defendants' motion to dismiss, filed December 12, 1997, at 5.

tal brief in response, Smith states that he is not asserting disparate impact claims under §§ 1981 and 1983.[8] In view of Smith's clarification of the nature of his claims, the court considers the parties bound by this interpretation of the complaint, and therefore considers the issue of Smith's asserting disparate impact claims under §§ 1981 and 1983, raised in the motion to dismiss, to be moot.

### I. Qualified Immunity

Finally, in their motion to dismiss, the defendants argue that the Transportation Department agents—Jimmy Butts, Ray Bass, Don Arkle, and Rex Bush—sued in their individual capacities under §§ 1981 and 1983 are entitled to qualified immunity for their actions. Because the complaint is rather thin in its pleading on this issue, and both of the parties' briefing is limited, the court finds that these Transportation Department agents are entitled to such immunity unless Smith comes forward with more specific pleading on these claims.

The doctrine of qualified immunity insulates government agents from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir.1990). As established by the Supreme Court in *Harlow*, the test for "good faith" or qualified immunity turns primarily on the objective reasonableness of the official's conduct in light of established law: "governmental officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. Where the law that the defendant allegedly violated was not clearly established at the time of the alleged offense, the defendant is entitled to qualified immunity. *Harlow*, 457 U.S. at 807, 102 S.Ct. at 2732; *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1503 (11th Cir.1990). If the law was clearly established, however, the immunity defense will fail since "a reasonably competent public

official should know the law governing his conduct." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

The Eleventh Circuit follows a two-step analysis to determine whether a public official is entitled to qualified immunity. *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). First, the defendant must prove that he was acting within the scope of his discretionary authority at the time of the allegedly unconstitutional conduct. *Id.* Once this is shown, the burden shifts to the plaintiff to prove that the defendant's actions violated clearly established statutory or constitutional law. *Id.; Busby*, 931 F.2d at 773; *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1322 (11th Cir. 1989).

The defendants assert, and Smith does not contest, that departmental agents were acting within their discretionary authority in the actions they took. In view of there being no dispute on this point, and being as there is no indication that the agents were not acting within their discretionary authority, the court so finds, and proceeds to the analysis of the second prong of the test: whether the departmental agents' actions violated clearly established law. This prong poses two distinct questions: first, whether the right claimed by Smith was clearly established at the time of the agents' conduct; and, second, whether Smith has pleaded enough facts that if proven would establish a genuine issue of fact as to whether the agents' conduct violated the clearly established right. *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir.1988). The court will first determine if Smith's rights under the equal protection clause were clearly established for purposes of qualified immunity.

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir.1992) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected

---

8. *Id.* at 4.

by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness must be apparent." *Id.* In determining the state of the law, this court must look to "the law originating in [the Eleventh] Circuit, as well as the Supreme Court, the courts of appeals, and the district courts." *Leeks v. Cunningham,* 997 F.2d 1330, 1333 (11th Cir.), *cert. denied,* 510 U.S. 1014, 114 S.Ct. 609, 126 L.Ed.2d 573 (1993); *Greason,* 891 F.2d at 833. Therefore, for Smith to defeat the Transportation Department agents' request for dismissal on qualified immunity grounds, he must show that the right he is claiming was "clear, factually-defined, [and] well-recognized" at the time of the Transportation Department agents' conduct since March 16, 1994. *Dartland,* 866 F.2d at 1321; *see also Bates v. Hunt,* 3 F.3d 374, 379 (11th Cir. 1993).

In the Eleventh Circuit, the precedent is very clear that intentional racial discrimination in the workplace is forbidden by the fourteenth amendment to the United States Constitution, and any official who engages in such discrimination is without the protection of qualified immunity. *See Smith v. Lomax,* 45 F.3d 402, 407 (11th Cir.1995); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1064 (11th Cir.1992); *Busby v. City of Orlando,* 931 F.2d 764, 775–76 (11th Cir.1991); *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1478–79 (11th Cir.1991). The cases cover a wide range of employment decisions, including discharge, failure to hire, failure to promote, transfer, and demotion, and make it perfectly clear that intentional racial discrimination is prohibited in the workplace, and that this has been a long-established rule of which employers should be well aware. The court therefore finds that the rule of law that the Transportation Department's agents have been accused of violating was well-established at the time of their actions.

■ On the second question of whether Smith has pleaded sufficient facts as to whether the departmental agents' conduct violated the clearly established right, the court finds that Smith has not pleaded enough facts to allow the court to determine if there has been a constitutional violation here. In evaluating claims of qualified immunity, the Eleventh Circuit imposes a "heightened pleading requirement" on plaintiffs. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir. 1998). Even though Rule 8 of the Federal Rules of Civil Procedure generally gives a plaintiff considerable leeway in pleading his case, this heightened pleading requires more detailed allegations by the plaintiff where the court is confronted with a claim of qualified immunity because the court must have more specific information before it to adequately evaluate such a claim. *Id.* Consequently, Smith has to come forward with specific facts, concerning each defendant, indicating that each defendant has violated his fourteenth amendment rights. Otherwise, the court must conclude that the named defendants, sued in their individual capacities, are entitled to qualified immunity from claims under both §§ 1981 and 1983. *See Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1379 (11th Cir.1997) (indicating that qualified immunity is available for both § 1981 and § 1983 claims).

■ To plead specific enough information for the court to conclude that the defendants have violated the equal protection clause of the fourteenth amendment, Smith must allege specific acts and an intent to discriminate on the part of all the defendants. *Mencer v. Hammonds,* No. 95–6827, 1998 WL 44530, at *4 (11th Cir. Feb.5, 1998). And Smith cannot rely on *respondeat superior* liability for any of the defendants because such liability is not cognizable under §§ 1981 or 1983. *Braddy v. Florida Dep't of Labor & Employment Sec.,* 133 F.3d 797, 801 (11th Cir.1998). For Smith to show supervisor liability, he must allege that the supervisor personally participated in the violation or that there was a causal connection between the actions of the supervisor and the violation. *Id.* at 801–02; *see also Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute

widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Braddy,* 133 F.3d at 802 (quoting *Brown,* 906 F.2d at 671).

In his complaint, Smith has alleged only very general facts about the nature of the violations committed by defendants Butts, Bass, Arkle, and Bush in violation of §§ 1981 and 1983. Consequently, the court cannot determine if they have engaged in a violation of Smith's rights. The defendants are entitled to qualified immunity unless Smith comes forward with more specific allegations.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) The defendants' motion to dismiss, filed on June 24, 1997, is granted to the extent that:

(a) All claims under 42 U.S.C.A. §§ 1981 and 1983 against defendants State of Alabama and the Alabama Department of Transportation, and the claims for damages against defendants Jimmy Butts, Ray Bass, Don Arkle, and Rex Bush, in their official capacities, are dismissed;

(b) The claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, against defendants Butts, Bass, Arkle, and Bush, in their individual capacities, are dismissed;

(c) The requests for punitive damages under Title VII against all defendants are dismissed; and

(d) The claims for damages under 42 U.S.C.A. §§ 1981 and 1983 against defendants Butts, Bass, Arkle, and Bush, in their individual capacities, will be dismissed, based on said defendants' qualified immunity, unless, within 14 days, plaintiff Jessie Lorenzo Smith amends his complaint to clarify his claims as set forth in this order.

(2) Said motion is denied in all other respects.